Harold LACY, Appellant,

v.

STATE of Alaska, Appellee.

No. 3741.

Supreme Court of Alaska.

March 14, 1980.

Walter Share, Asst. Public Defender, Brian C. Shortell, Public Defender, Anchorage, for appellant.

Charles W. Cohen, John Scukanec, Asst. Dist. Attys., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

MATTHEWS, Justice.

Appellant was convicted of one count of rape in violation of AS 11.15.120; two counts of assault with a dangerous weapon in violation of AS 11.15.220; two counts of kidnapping in violation of AS 11.15.260; and one count of petty larceny in violation of 'AS 11.20.140. He was sentenced to a term of imprisonment for 15 years for rape, 15 years for each kidnapping count, 5 years for each assault with a dangerous weapon count, and 6 months for the petty larceny, all to run concurrently.

The convictions arose from events which occurred in the early morning hours of Sunday, June 26, 1977. At about 4:30 a. m. two young women left an Anchorage night club, walked to their car, and had just entered their vehicle when a man holding a pistol opened a car door and got inside. He directed them to drive to what the parties refer to as Stuckagain Heights, a sparsely populated area separated from Anchorage by an uninhabited natural area.[1] He raped one of the women and unsuccessfully attempted to rape the other. After the rape, the car became mired on a muddy road. The assailant left his victims in their car, telling them not to leave and that he was going to a friend's house for help. Out of fear, the two women stayed in the car for about an hour before making their way to the nearest house and calling the police.

A policeman arrived to interview the victims at 8:18 a. m. After a short interview he ordered a roadblock set up across the only road exiting the area suitable for passenger cars.

Trooper Rodney Pilch arrived at the designated intersection around 8:30 a. m. At the time he knew only that the suspect was a black male adult. His intention was to stop all cars leaving this area, obtain the names and addresses of the occupants, find out where they were going, and ask if they had seen anything unusual. The first car he stopped, about three minutes after he arrived, was driven by Lacy who was accompanied by a sleeping male passenger. Pilch asked Lacy for identification. When Lacy replied that he had none, Pilch asked him to step from his car. As Lacy got out, Pilch noticed a wallet sticking out from under his seat. Pilch removed the wallet and asked Lacy if it belonged to him. Lacy said that it did and Pilch examined the contents of the wallet and found an identification card with Lacy's name on it. While Pilch was questioning Lacy, a detailed description of the suspect was broadcast over the patrol car's loudspeaker. The broadcast described the suspect as being a black man, approximately 6 feet in height, 190 pounds in weight, wearing a yellow T-shirt, blue pants, with a cut on his thumb. The description matched Lacy in all respects. Lacy was then placed in custody. His car was subsequently impounded and searched. The search revealed a tape player, speakers and tapes which had been taken from the victims' car.

The primary argument on this appeal is that the roadblock stop of Lacy's vehicle was illegal under sections 14[2] and 22[3] of

---

1. Stuckagain Heights is accessed by Basher Road, a winding dirt road leading uphill from Tudor Road. The road serves the residents of approximately one dozen homes in the area. Narrow dirt roads run throughout the area and persons travelling on foot or in vehicles suitable to travel these unmaintained roads and trails could leave the area in a number of ways.

However, regular passenger automobiles unsuited for rough terrains are limited to Basher Road as their only means of egress from Stuckagain Heights.

2. Alaska Const. art. I, § 14 provides:
   *Searches and Seizures.* The right of the people to be secure in their persons, houses

article I of the Alaska Constitution and the fourth amendment to the United States Constitution [4] and therefore all the fruits of that stop must be suppressed under Alaska Rule of Criminal Procedure 26(g).[5] The argument, however, stands virtually unsupported by any applicable authority.

■ It is our view that roadblocks can properly be established when a serious crime has been committed for purposes of investigation or apprehension of a suspect where exigent circumstances exist and where the roadblock is reasonable in light of the particular circumstances of the case. That essentially is the position taken by the Model Code of Pre-Arraignment Procedure,[6] most commentators [7] and the relatively few cases which have dealt with the issue.[8] With respect to the requirement of reasonableness, one commentator has this to say:

> But, while the roadblock tactic as compared to the typical stop and frisk situation, requires *more* evidence that a crime has occurred, by its very nature it requires *less* evidence that any particular vehicle stopped is occupied by the perpetrator of that crime. Indeed, there need be no suspicion at all with regard to any particular vehicle, except that which exists by virtue of it being in the locale of the roadblock. This means, however, that the placement of the roadblock must itself be reasonable; that is, there "must be some reasonable relation between the commission of the crime and the establishment and location of the roadblock." Presumably there could be circumstances in which the roadblock would be so far distant from the crime as to be unreasonable, but this is a judgment which can only be made based upon the facts of the individual case. Information that the offender was headed in a particular direction would be relevant on this point, as would police knowledge of the number of alternative paths of escape and the like.

3 W. LaFave, Search and Seizure § 9.5, at 142–43 (1978) (emphasis in text) (footnotes omitted).

Recent decisions of the United States Supreme Court lend a measure of support for

and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

3. Alaska Const. art. I, § 22 provides:
   *Right of Privacy.* The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section.

4. U.S.Const. Amend. IV provides:
   *Searches and Seizures.* The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

5. Alaska R.Crim.P. 26(g) provides:
   *Evidence Illegally Obtained.* Evidence illegally obtained shall not be used for any purpose including the impeachment of a witness. Repealed as of 5/29/79.

6. A.L.I., A Model Code for Pre-Arraignment Procedure, § 110.2(2) (Proposed Official Draft, 1975) provides that:

[A] law enforcement officer may, if
(a) he has reasonable cause to believe that a felony has been committed; and
(b) stopping all or most automobiles, . . moving in a particular direction . . . is reasonably necessary to permit a search for the perpetrator or victim of such felony in view of the seriousness and special circumstances of such felony, order the drivers of such vehicles to stop, and may search such vehicles to the extent necessary to accomplish such purpose. . . .

7. *See,* 3 W. LaFave, Search and Seizure § 9.5 (1978); Andriolo, *Roadblock and the Law of Arrest in Montana,* 24 Mont.L.Rev. 137, 147 (1963); Landau, *Freedom of the Road: Public Safety v. Private Rights,* 14 De Paul L.Rev. 381, 408 (1964–65); *Automobile Spot Checks and the Fourth Amendment,* 6 Rutgers Camden L.J. 85, 100 (1974).

8. *See, United States v. Kuntz,* 265 F.Supp. 543 (N.D.N.Y.1967); *United States v. Bonanno,* 180 F.Supp. 71, 80 (S.D.N.Y.1960), *rev'd on other grounds sub nom., United States v. Bufalino,* 285 F.2d 408 (2nd Cir. 1960); *see also State v. Torres,* 29 Utah 2d 269, 508 P.2d 534, 536 (1973).

our view. In *United States v. Brignoni-Ponce,* 422 U.S. 873, 883, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607, 617–18 (1975), random stops of vehicles by border patrol agents to determine whether illegal aliens were in them was held to violate the fourth amendment. By contrast, roadblock vehicle stops for the same purpose were upheld in *United States v. Martinez-Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). Most recently, in *Delaware v. Prowse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), a police officer's random stop of a vehicle in order to check the driver's license and vehicle registration was held impermissible under the fourth amendment. The court in *Prowse* took pains to distinguish random stops from roadblock stops:

> Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. *Questioning of all oncoming traffic at roadblock-type stops is one possible alternative.*

*Id.,* 440 U.S. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 673–74 (emphasis added) (footnote omitted). Two reasons are given for distinguishing between random and roadblock stops. First, roadblock stops are perceived as causing less apprehension to motorists:

> At traffic checkpoints the motorist can see that other vehicles are being stopped, he can see visible signs of the officers' authority, and he is much less likely to be frightened or annoyed by the intrusion.

*United States v. Ortiz,* 422 U.S. 891, 894–95, 95 S.Ct. 2585, 2588, 45 L.Ed.2d 623, 628 (1975), *quoted in United States v. Martinez-Fuerte,* 428 U.S. at 558, 96 S.Ct. at 3083, 49 L.Ed.2d at 1129, and in *Delaware v. Prowse,* 440 U.S. at 657, 99 S.Ct. at 1398, 59 L.Ed.2d at 670. Second, random stops involve the exercise of "standardless and unconstrained discretion" in which there is a " 'grave danger' of abuse," *Delaware v. Prowse,* 440 U.S. at 660, 99 S.Ct. at 1399, 59 L.Ed.2d at 672, including, we assume, the possibility of harassment of members of racial minority groups or people of unconventional appearance.

■ The roadblock established here fits easily within the requirements for a lawful roadblock. A serious crime had recently been committed. The investigating officers had reason to believe that the criminal was in the area and would be exiting from it on the road where the roadblock was established. We conclude, therefore, that the roadblock stop of Lacy's vehicle was lawful.

■ Another point on appeal pertains to the exclusion of Lacy's testimony that he had never been convicted of a crime. That was error, for a defendant in a criminal case may introduce evidence of his good character. C. McCormick, Law of Evidence § 191, at 454 (2d ed. 1972); Alaska Rule of Evidence 404(a)(1). However, in view of the overwhelming case against Lacy the error was clearly harmless and will be disregarded. *Love v. State,* 457 P.2d 622, 629 (Alaska 1969); Alaska Rule of Criminal Procedure 47(a).

■ Lacy also claims that the multiple convictions he received amount to double jeopardy.[9] We have expressed the method for evaluating such claims as follows:

> The trial judge first would compare the different statutes in question, as they apply to the facts of the case, to determine whether there were involved differences in intent or conduct. He would

9. Alaska Const. art. I, § 9 provides, in part: No person shall be put in jeopardy twice for the same offense.

then judge any such differences he found in light of the basic interests of society to be vindicated or protected, and decide whether those differences were substantial or significant enough to warrant multiple punishments. The social interests to be considered would include the nature of personal, property or other rights sought to be protected, and the broad objectives of criminal law such as punishment of the criminal for his crime, rehabilitation of the criminal, and the prevention of future crimes.

*Whitton v. State*, 479 P.2d 302, 312 (Alaska 1970).

Rape, assault with a dangerous weapon, and kidnapping are separate crimes with separate elements. Under the circumstances here, they involve differences in intent and conduct, and when they were committed, different kinds of personal rights were involved. *State v. Occhipinti*, 562 P.2d 348, 351 (Alaska 1977). No error was committed on this point.

■ Lacy also contends that error was committed with respect to a photographic lineup and subsequent in court identification, with respect to the admission of expert testimony comparing various samples of hair and clothing, and with respect to a jury instruction relating to assault with a dangerous weapon. We have reviewed these points and find that no error was committed.

■ In addition, Lacy contends that concurrent sentences of 15 years are excessive. We do not agree. The sentencing judge was fully aware of the defendant's personal background, including his alcoholism, and expressly adverted to the various sentencing goals suggested in *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970). We see no grounds which justify disturbing the sentence.

AFFIRMED.

RABINOWITZ, C. J., not participating.