**Michael Loren HINTZ, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3541.**

Supreme Court of Alaska.

May 1, 1981.

**2.** Alaska Const., Art. I, § 1; U.S.Const., Amend. XIV, § 1.

Valerie M. Therrien, Fairbanks, for appellant.

Natalie K. Finn, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

CONNOR, Justice.

Following trial by jury, Michael Loren Hintz was convicted of one count of kidnapping, one count of rape, and two counts of armed robbery. Hintz was sentenced to life imprisonment on the kidnapping charge, 20 years for the rape, to be served consecutively to the life sentence, and ten years each for the two counts of armed robbery, to be served concurrently with the rape sentence and with each other. He appeals from his conviction on several grounds and challenges his sentence as excessive. We affirm Hintz's conviction, but order that his sentence be reduced in accordance with this opinion.

On December 28, 1976, at approximately 9:30 p. m., R.S. left the Fairbanks department store where she was employed and prepared to drive home. As she was warming up her car in the parking lot, appellant entered the car, produced a gun and ordered her to move over. Hintz then drove approximately 20 miles outside of town, parked in a secluded area and raped R.S. During this time Hintz repeatedly cocked and uncocked the gun when R.S. hesitated to comply with his demands. Afterwards Hintz ordered her to dress in only her boots and jacket and to get out of the car. As she exited the vehicle, however, her pants and blouse fell to the ground. When R.S. asked for her purse, Hintz demanded her money, consisting of a dollar and some change. Hintz then drove away, abandoning R.S. in the minus 13° weather. R.S. dressed herself and alternately walked and ran approximately two miles to the nearest house. There she told the occupants she had been raped and they notified the police.

Even before R.S. reported the rape, the Fairbanks police were attempting to locate R.S.'s car. A co-worker had seen R.S. go out to her car, heard her scream and saw an individual wearing a face mask force R.S. back into her car. The co-worker immediately reported the incident to the police. Acting on this information, the city police requested Trooper O'Bryant to locate and stop R.S.'s car. O'Bryant was not told why he should stop the car, but only that there were suspicious circumstances involving the vehicle. At about 10:40 p. m. O'Bryant stopped Hintz who was heading northbound into town, and he asked Hintz's name and date of birth. The two then waited approximately ten minutes for the city police to arrive. During this time Hintz, who had not been advised of his *Miranda* [1] rights, sat in the front seat of O'Bryant's patrol car. Trooper O'Bryant testified that it was not his practice to give a *Miranda* warning when questioning was confined solely to identification.

Upon arrival of the city police, Hintz and O'Bryant exited the patrol car. City Police Officer Kendrick apparently knew little more about the parking lot incident than Trooper O'Bryant. Officer Kendrick asked appellant who he was, where he got the car, and where R.S. was. Appellant told of a girl named Elaine who had picked him up at

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

or near a local Pay N' Save. He said he had dropped her off at an intersection of the highway. Shortly after eliciting these responses, Officer Kendrick received a radio transmission that R.S. had been found and that she had allegedly been raped. At that point Officer Kendrick placed appellant under arrest and advised him of his *Miranda* rights. Appellant preferred not to talk and Officer Kendrick asked no further questions.

▇ Prior to the omnibus hearing, appellant moved to suppress the statements made by Hintz in response to Officer Kendrick's questions. The story about Elaine was admitted by Hintz to be a fabrication and his statements were eventually used to impeach him at trial. In our view, the statements were properly admitted. Until his arrest Hintz was not in custody. Therefore, no *Miranda* warnings were required and no violation of appellant's Fifth Amendment rights occurred.

In *Hunter v. State*, 590 P.2d 888, 892 (Alaska 1979), we adopted the reasonable person standard for determining when a person is in custody or otherwise "significantly deprived of his freedom" so as to necessitate *Miranda* warnings. Specifically, we listed three groups of facts relevant to such a determination:

"The first are those facts intrinsic to the interrogation: when and where it occurred, how long it lasted, how many police were present, what the officers and the defendant said and did, the presence of actual physical restraint on the defendant or things equivalent to actual restraint such as drawn weapons or a guard stationed at the door and whether the defendant was being questioned as a suspect or as a witness. Facts pertaining to events before the interrogation are also relevant, especially how the defendant got to the place of questioning—whether he came completely on his own, in response to a police request, or escorted by police officers. Finally, what happened after the interrogation—whether the defendant left freely, was detained or arrested—may assist the court in determining whether the defendant, as a reasonable person, would have felt free to break off the questioning." (footnote omitted). *Id.* at 895.

Applying this standard, we find nothing in the circumstances of the interrogation itself which leads us believe that appellant was "in custody." Until Officer Kendrick received word that a rape had been reported, he was unaware that any crime had been committed. His investigation of Hintz was directed solely toward gaining information about suspicious circumstances involving the car Hintz was driving. Such an "investigative detention" is a legitimate police procedure. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906–07 (1968); *Coleman v. State*, 553 P.2d 40, 43 (Alaska 1976); *Goss v. State*, 390 P.2d 220, 224 (Alaska 1964), *cert. denied*, 379 U.S. 859, 85 S.Ct. 118, 13 L.Ed.2d 62 (1964).

Moreover, the record discloses no use of force or coercion by the police such as physical restraint or an armed guard. The fact that Hintz sat in Trooper O'Bryant's patrol car while waiting for the city police to arrive is of no particular import. In the circumstances of this case, the patrol car was not a coercive environment. Because the temperature was between 8° and 13° below zero, it was reasonable for Hintz to go to the patrol car to answer simple investigatory questions.

▇ Nor do the events occurring before or after the interrogation require a different result. Hintz was ultimately arrested because a radio report was received by Officer Kendrick, not because information was gleaned from Hintz's answers. Upon receipt of that report he was immediately advised of his *Miranda* rights. There is no indication that he would not have been released had that report not been received.[2]

2. We have carefully considered each of the remaining specifications of error advanced by appellant in this appeal and find no merit in any of them. Nevertheless, brief mention will be made of appellant's assertion that the superior court erred in the giving of a *Mann* instruction. The instruction in question reads as follows:

Hintz appeals his sentence as excessive. As we noted at the outset of this opinion, Hintz was sentenced to life imprisonment for kidnapping, twenty years for rape, to be served consecutively to the life sentence, and ten years for each of two counts of armed robbery, to be served concurrently with each other and with the rape sentence.[3]

■ A life sentence is the maximum sentence allowable for kidnapping.[4] Likewise, twenty years is the maximum sentence for rape.[5] We have stated on numerous occasions that a maximum sentence is not appropriate unless the defendant can be characterized as a "worst offender."

■ By "worst offender" we mean that the defendant must be the worst type of offender "within the group of persons committing the offense in question." *Wilson v. State*, 582 P.2d 154, 157 n.3 (Alaska 1978). In evaluating whether a particular defendant is a worst offender we look at the manner in which the crime was committed, as well as the character and background of the defendant. *Moore v. State*, 597 P.2d 975, 976 n.4 (Alaska 1979); *Saganna v. State*, 594 P.2d 69 (Alaska 1979). In *State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975), we listed several factors the court has looked to in order to support a characterization as worst offender: prior criminal convictions, age, military records, employment history, drug or alcohol addiction, presentence report evaluations and predictions, and the possible presence of antisocial tendencies which pose a clear risk to the public.

> "It is *reasonable to infer* that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. So unless the contrary appears from the evidence, *the jury may draw the inference* that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably expect to result from any act knowingly done or knowingly omitted by the accused."

For the reasons discussed in *Calantas v. State*, 608 P.2d 34, 36 (Alaska 1980), we hold that the giving of this instruction was not prejudicial error.

■ In the present case, although the sentencing judge concluded that appellant was a "professional criminal," we find no justification for such a conclusion. The record discloses that appellant was 21 years old at the time the offense was committed. He had no history of drug abuse and termed himself a "social drinker." His only prior offense was a 1975 conviction for burglary not in a dwelling. Although appellant's psychological evaluation noted some antisocial tendencies, these were termed only "moderate" and the examining psychiatrist conjectured that such tendencies might be modified by the simple process of aging. In short, there is nothing particularly unique about appellant's past or, for that matter, his future, which calls for classification as a worst offender.

Nor do we think that the manner in which the crimes were carried out justifies such a classification. On two previous occasions, we have affirmed maximum sentences for kidnapping in a kidnapping-rape situation. In each case, however, the defendant's background or character was such as would justify classification as a "worst offender" or the crime was committed in a particularly heinous manner. In *Morrell v. State*, 575 P.2d 1200 (Alaska 1978), the victim was confined, and often physically bound, for a period of eight days. And in *Post v. State*, 580 P.2d 304 (Alaska 1978), the victim was held for over 20 hours and regained her freedom only by escaping. Moreover, in *Post*, the defendant possessed a lengthy criminal record and had "highly dangerous potentialities," 580 P.2d at 310 (concurring opinion of Boochever, C. J.).

3. In *State v. Occhipinti ex rel. Levshakoff*, 562 P.2d 348, 351 (Alaska 1977), we held that kidnapping, rape and robbery constitute three distinct offenses, each of which violates a different societal interest. It is therefore appropriate to impose three distinct sentences, even though the kidnapping was only a prelude to the commission of the other offenses.

4. AS 11.15.260. (repealed effective Jan. 1, 1980).

5. AS 11.15.130(c). (repealed effective Jan. 1, 1980).

In the present case, we find no such aggravating factors. While we do not mean to minimize the seriousness of the crimes involved, we do not believe that appellant's conduct in this case can be put on a par with that in *Morrell* and *Post.*

In *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970), we recognized the following goals of criminal sanctions: (1) rehabilitation of the convicted offender into a non-criminal member of society; (2) isolation of the offender from society to prevent criminal conduct during the period of confinement; (3) deterrence of other members of the community who might have tendencies toward criminal conduct similar to those of the offender; (4) deterrence of the offender himself after release; (5) community condemnation of the individual offender, or in other words, the affirmation of societal norms for the purpose of maintaining respect for the norms themselves.

Applying these standards to the present case, it is clear that a substantial period of incarceration is warranted. As we noted in *Post v. State,* 580 P.2d 304, 309 (Alaska 1978), the kidnap-rape situation is often associated with serious injury or death to the victim and must be strongly condemned. Nevertheless, in the circumstances of the present case, we think that a sentence of life plus twenty years is clearly mistaken and, therefore, excessive. Such an extraordinarily long sentence completely disregards any hope of rehabilitation. Moreover, we think whatever added deterrence such a sentence would have is minimal at best. In our view a sentence of 20 years for kidnapping, and a sentence of 10 years for rape, to be served consecutively to the sentence for kidnapping, is appropriate. The two sentences of 10 years for armed robbery, to be served concurrently with each other and with the rape sentence shall remain unchanged.

The conviction is AFFIRMED. The case is REMANDED for the entry of an amended judgment in conformity with this opinion.

MATTHEWS, Justice, joined by RABINOWITZ, Chief Justice, dissenting in part.

I concur in the opinion of the majority, except with respect to the sentence. As to that, I agree that appellant should be sentenced to not more than twenty years for kidnapping, ten years for rape, and ten years for each armed robbery count, but I believe all of these sentences should be served concurrently. I reach this conclusion in light of the appellant's youth, his prior record, and the fact that as crimes of this nature go, this was not a particularly brutal one and it apparently resulted in no permanent physical harm to the victim.[1]

---

1. *Contrast Helmer v. State,* 616 P.2d 884 (Alaska 1980) a rape, assault with intent to kill and burglary in a dwelling conviction in which this court reduced a sentence from 30 to 25 years, even though the youthful assailant there intended to kill his victim and inflicted serious and permanent injuries on her, *with Ahvik v. State,* 613 P.2d 1252 (Alaska 1980) in which this court, in a three-to-two decision, reduced the sentence of another youthful rapist from five years to five years with two years suspended where the victim was not physically harmed. Drawing on our most recent sentence appeal decisions, the present case seems factually most similar to *Lacy v. State,* 608 P.2d 19 (Alaska 1980) in which we affirmed a fifteen year sentence for rape, two counts of kidnapping, two counts of assault with a dangerous weapon, and petty larceny.