Scott A. **WALKER**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 7163.

Court of Appeals of Alaska.

Dec. 23, 1983.

Walter Share and William P. Bryson, for appellant.

David Mannheimer, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

On the thirteenth day of May, 1981, Scott Walker, Dale Willhite, and Timothy Hopkins burglarized the residence of Harvey Noble and obtained several firearms. On the twenty-ninth day of May they planned to burglarize the residence of Mildred Walatka. The three apparently intended to burglarize the residence when it was unoccupied, but when Walker knocked on the door to make sure no one was home, Mrs. Walatka's son, Herbert Oakley, opened the door. The three claimed they had car problems and needed to use the telephone. They were allowed to enter. While Scott Walker was using the telephone, Willhite pulled a gun. The three then proceeded to take ivory and jewelry which was in the home. They then forced Mrs. Walatka and Herbert Oakley into a car at gunpoint. They drove to a bank and Mrs. Walatka was forced to withdraw some money from the bank. Then Mrs. Walatka and Mr. Oakley were driven out of town and shot to death.

Walker was tried for two counts of first-degree murder, two counts of kidnapping, one count of robbery, one count of burglary and two counts of theft. The jury acquitted Walker of the two counts of murder but convicted him on the other counts. Trial Judge S.J. Buckalew sentenced Walker to a total of eighty-nine years' imprisonment. Walker appeals his conviction and sentence to this court. We affirm.

Walker admitted at trial that he agreed to participate in the burglary of the Walatka residence. However, he claimed that from the moment that Willhite pulled his gun he had to go along with the greater crimes out of fear for his own safety. He claimed that had he not participated, Hopkins and Willhite would have killed him. Judge Buckalew instructed the jury on the defense of duress, which is an affirmative defense under the revised criminal code. AS 11.81.440 provides that:

> *Duress.* (a) In any prosecution for an offense, it is an affirmative defense that the defendant engaged in the proscribed conduct because he was coerced to do so by the use of unlawful force upon him or a third person, which force a reasonable person in his situation would have been unable to resist.
>
> (b) The defense of duress is not available when a person recklessly places himself in a situation where it is probable that he will be subject to duress.

Since duress is an affirmative defense, the defendant has the burden of establishing that defense by a preponderance of the evidence.[1]

Walker objected to the court's instructions at trial, arguing that placing the burden on him to prove his defense by a preponderance of the evidence is a violation

---

1. AS 11.81.900(b)(1) provides:
   *Definitions.*
   (b) As used in [this title], ...
   (1) "affirmative defense" means that
   (A) some evidence must be admitted which places in issue the defense; and
   (B) the defendant has the burden of establishing the defense by a preponderance of the evidence.

of substantive due process. He has renewed that argument on appeal. Walker contends that once he had introduced some evidence of the defense of duress, it was then the duty of the prosecutor to prove beyond a reasonable doubt that he did not act under duress.

In the case of *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375 (1970), the Supreme Court held that substantive due process required "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." This holding was reaffirmed in *Mullaney v. Wilbur,* 421 U.S. 684, 698, 95 S.Ct. 1881, 1889, 44 L.Ed.2d 508, 519 (1975), and *Patterson v. New York,* 432 U.S. 197, 210–11, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281, 292–93 (1977). However, in *Patterson* the court stated:

> We thus decline to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused. Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch. We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here.
>
> This view may seem to permit state legislatures to reallocate burdens of proof by labeling as affirmative defenses at least some elements of the crimes now defined in their statutes. But there are obviously constitutional limits beyond which the States may not go in this regard. "[I]t is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime." The legislature cannot "validly command that the finding of an indictment, or mere proof of the identity of the accused, should create a presumption of the existence of all the facts essential to guilt."
>
> Long before Winship, the universal rule in this country was that the prosecution must prove guilt beyond a reasonable doubt. At the same time, the long-accepted rule was that it was constitutionally permissible to provide that various affirmative defenses were to be proved by the defendant. This did not lead to such abuses or to such widespread redefinition of crime and reduction of the prosecution's burden that a new constitutional rule was required. This was not the problem to which Winship was addressed. Nor does the fact that a majority of the States have now assumed the burden of disproving affirmative defenses—for whatever reasons—mean that those States that strike a different balance are in violation of the Constitution.

*Id.,* 432 U.S. at 210, 97 S.Ct. at 2327, 53 L.Ed.2d at 292–93 (footnotes and citations omitted). This language appears to us to establish the fact that the United States Supreme Court wished to give state legislatures considerable leeway in defining defenses to crimes. While holding firm to the general proposition that the constitution requires the prosecution to shoulder the traditional burden of showing the guilt of the accused beyond a reasonable doubt, the court allows the burden of proof to be placed on defendants for at least some affirmative defenses.

Walker argues that if he acted under duress he did not have any criminal intent to commit a crime. He argues that his criminal intent is an essential element of the crime which the state must prove beyond a reasonable doubt. However, Professors LaFave and Scott state that:

> The rationale of the [duress] defense is not that the defendant, faced with the unnerving threat of harm unless he does an act which violates the literal language

of the criminal law, somehow loses his mental capacity to commit the crime in question. Rather it is that, even though he has the mental state which the crime requires, his conduct which violates the literal language of the criminal law is justified because he has thereby avoided a harm of greater magnitude.

W. LaFave & A. Scott, *Criminal Law,* § 49, at 374 (1972). According to this analysis, duress appears to be appropriately classified as an affirmative defense. It also appears that by placing the burden of proof on the defendant to establish duress by a preponderance of the evidence, the legislature has not placed the government in a position where it does not have to prove the essential elements of the crime beyond a reasonable doubt. The government still had to prove that Walker committed all the elements of the crimes of which he was convicted. However, once the government proved that Walker committed the crimes, Walker had to show that he was justified in committing the crimes in order to prove the defense of duress. We believe that the legislature did not violate substantive due

process by placing the burden of proof on Walker to prove the defense of duress by a preponderance of the evidence.[2]

The trial court instructed the jury that "the defense of duress is not available when a person recklessly places himself in a situation in which it is probable that he will be subject to duress." The trial court also told the jury that "culpable mental state" means "intentionally, knowingly, *recklessly* or with criminal negligence." (Emphasis supplied.) Walker argues that the trial court erred in not giving an instruction defining recklessness. He concedes that he did not object to the instructions on this ground. He therefore has to establish that failure to define recklessness constitutes plain error. We are to find plain error only "where necessary to prevent a miscarriage of justice." *Dimmick v. State,* 449 P.2d 774, 776 (Alaska 1969). We have previously concluded that a trial court's failure to define the term "recklessly" was not plain error in *Williams v. State,* 648 P.2d 603, 608 (Alaska App.1982). We said:

The meaning of "recklessly" is well within the comprehension of the average jur-

2. Walker cites *State v. McCullum,* 98 Wash.2d 484, 656 P.2d 1064 (1983) for the proposition that due process requires the government to prove the absence of self-defense beyond a reasonable doubt. He reasons that, if the prosecution must prove the absence of self-defense by a beyond a reasonable doubt standard, then the prosecution also has to prove the absence of duress by the same standard.

First, we specifically do not decide in this case what position we would take in the event that the legislature made self-defense an affirmative defense for which the defendant had the burden of proof. That would probably be a much more difficult case than the present one. Currently the prosecution must prove the absence of self-defense beyond a reasonable doubt. AS 11.81.330, .335 and AS 11.81.-900(b)(15).

Second, we do not believe that the *McCullum* case stands for the proposition that a state cannot constitutionally make self-defense an affirmative defense and place the burden on the defendant of proving that defense. The *McCullum* case turned on that court's particular interpretation of Washington law. The court noted that the Washington legislature had clearly placed the burden of proof on the defendant to establish certain defenses but that the new code was "conspicuously silent on the quantum or burden of proof as to self-defense." *Id.* 656

P.2d at 1070. The court also reasoned that the legislature was aware of prior decisions of Washington courts which placed the burden of proving the absence of self-defense on the prosecution beyond a reasonable doubt. *Id.* From this the court reasoned that the legislature intended to have the prosecution prove the absence of self-defense beyond a reasonable doubt. The court reached the same result independently through analysis of other provisions of the Washington code which made self-defense a "lawful act" and pointed out that, under the Washington code, to commit first-degree murder, a person must kill "unlawfully." We therefore read *McCullum* as a case of statutory interpretation where the court concluded that the legislature had made the absence of self-defense "an essential ingredient of the crime charged." *Id.* 656 P.2d at 1072. We do not read *McCullum* as saying that it would necessarily be unconstitutional for the Washington legislature to revise the code so that the defendant had to establish self-defense by a preponderance of the evidence.

*Foraker v. State,* 394 A.2d 208, 214 (Del. 1978) is more on point. In that case the court found constitutional a Delaware statute which established duress as an affirmative defense which the defendant had to prove by a preponderance of the evidence.

or and the code definition appears to be a common sense definition of the term. We do not find that the failure to define the term "recklessly" constituted plain error. [Footnotes omitted.]

We see no reason to depart from that holding. We find no error.

■ Walker next argues that the trial judge committed plain error in his instructions on accomplice testimony. Walker points out that the jury was told that he could be convicted if they found he "either committed an offense or was an accomplice to an offense." He also points out that the jury was told that the testimony of an accomplice was to be viewed with distrust:

If you find from the evidence that one or more of the witnesses in this case were accomplices, as defined in these instructions, you are instructed that the testimony of such witness or witnesses should be *viewed with distrust*. This does not mean that you may arbitrarily disregard such testimony, but you should give it the weight to which you find it to be entitled *after examining it with care and caution* and in the light of all the evidence in the case. [Emphasis added.]

Walker argues that reading these two instructions together, the jury might have interpreted these instructions as an instruction to regard his testimony with distrust since he essentially admitted being an accomplice because he admitted participation in the crimes but argued that he acted under duress.

The main testimony against Walker at trial was that of Willhite, who was essentially given immunity from all the charges, including the murder and kidnapping charges. The only penalty Willhite suffered was that he was placed on a suspended imposition of sentence for theft, in return for information about Walker and Hopkins and testimony against them. Therefore Walker was entitled to an instruction that the jury should regard the testimony of an accomplice with distrust. *Anthony v. State,* 521 P.2d 486, 491 (Alaska 1974); *Price v. State,* 647 P.2d 611, 617 (Alaska App.1982). The instruction of

which Walker complains was designed to bolster his argument that Willhite had every reason to lie and place the blame on Walker to get the highly favorable sentence which he received. Directly following the instruction which told the jury to regard the testimony of an accomplice with distrust, was the instruction that the testimony of an accomplice had to be corroborated. That instruction explained the reason the jury should distrust accomplice testimony and stated:

The defendant cannot be convicted on the testimony of an accomplice unless the testimony is corroborated by other evidence which tends to connect the defendant with the commission of the crime. The requirement of corroboration is based on an assumption that an accomplice might falsely accuse others of a crime in order to purchase for himself immunity from punishment.

In addition, another instruction told the jury how the testimony of the defendant was to be regarded:

In this case the defendant testified in his own behalf. You should subject the defendant's testimony to *the same scrutiny as the testimony of any other witness.* [Emphasis added.]

We conclude that Walker has not shown plain error. He received the benefit of the instruction which clearly informed the jury to regard Willhite's testimony with distrust. The court's other instructions in essence explain the reason for the rule. They imply that Willhite's testimony is the testimony which is to be regarded with distrust and that the jury is to look at the defendant's testimony as they would the testimony of any other witness. We find no plain error.

■ Walker argues that the trial court committed plain error by giving the following instruction which reads in part as follows:

It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts he knowingly does or knowingly omits. Any such reasonable inference is entitled to be con-

sidered by the jury in determining whether or not the prosecution has proved beyond a reasonable doubt that the defendant possessed the required intent.

We have formerly held that similar instructions are not plain error and we reach the same conclusion in this case. *Doisher v. State,* 632 P.2d 242, 258 (Alaska App.1981), *rev'd on other grounds,* 658 P.2d 119 (Alaska 1983). *See Calantas v. State,* 608 P.2d 34 (Alaska 1980).

■ Walker next objects that Chief Investigator Sterns was permitted to give his opinion that he believed that Willhite did not shoot Walatka and Oakley. He argues that the trial judge abused his discretion in allowing this testimony.

Investigator Sterns was the chief investigating officer in the case and apparently had participated in the state's agreement to immunize Willhite in return for his cooperation and testimony. Willhite contended that Walker and Hopkins actually shot Walatka and Oakley. At trial Walker contended it was Willhite and Hopkins.

On cross-examination, Investigator Sterns conceded that there was no physical evidence which indicated whether Walker or Willhite did the shooting. On redirect examination the following exchange occurred:

PROSECUTOR: Did you satisfy yourself personally and professionally that Dale Willhite was not one of the shooters prior to entering into the agreement?

DEFENSE ATTORNEY: Objection on opinion as to the ultimate issue, Your Honor. I don't believe he's qualified to offer opinion evidence as to this question.

THE COURT: Do you want to respond to that? I just wondered listening to the cross-examination; what's the State's position, will you respond to his objection?

PROSECUTOR: Your Honor, opinion on ultimate issue; it's not an ultimate issue, of course. There are opinions that are allowed on ultimate issues, so as far

as that's concerned, it doesn't make any difference.

He asked questions about what the Officer had done to verify, and what the evidence showed about whether or not Mr. Willhite was a shooter. I'm not going to ask the Officer about all of those things that went into his calculations, but it's fair to ask him, taking all those things into consideration, about whether or not he has an opinion as to whether the man was in fact a shooter.

THE COURT: After listening to the cross-examination, I think the State ought to have a—I'll permit the question.

PROSECUTOR: Did you, Investigator Sterns, satisfy yourself both personally and professionally prior to agreeing that Mr. Willhite would be used to testify against the other persons, that he was not one of the shooters at the scene?

WITNESS: Yes, I did.

PROSECUTOR: I don't have any other question.

On appeal Walker contends that this testimony was prejudicial because the jury might have been unduly swayed by Stern's opinion and that the jury might have concluded that Investigator Sterns had information which they did not have which proved Walker's guilt. The state argues that the testimony was admissible to rebut an implied defense accusation that because of public pressure on him to solve this case Sterns had made a deal with Willhite before he had sufficient information to determine the relative culpability of Willhite and Walker.

Although it would have been preferable to not have had this issue arise, we conclude the trial court did not abuse its discretion in admitting this testimony. Investigator Stern's opinion on whether Willhite had shot Walatka and Oakley was relevant to his state of mind at the time he participated in making the deal for Willhite's testimony. We doubt that the explicit statement of his view that Walker and not Willhite had done the shooting was something the jury did not

already know, and the basis for his conclusion and the possible lack of evidence to support that conclusion was before the jury. We note that the members of the jury apparently rejected Investigator Stern's conclusion at least to some degree because they found Walker not guilty of the murder charges. We conclude that the trial judge did not abuse his discretion in admitting this statement by Investigator Sterns.

■ Walker contends that the trial court erred in failing to suppress a written statement. While in jail Walker wrote out a statement in which he stated that he and Willhite shot Walatka and Oakley and related a version of the killings. In that version Hopkins was the person who did not shoot. Walker placed this statement in a box with some personal possessions and placed it under the bunk of Van Travelstead, who had been assigned to the same cell as Walker. Travelstead took the written statement from the box and turned it over to his attorney who turned it over to the prosecution. Walker moved to suppress the statement and the motion was denied. The statement was admitted at Walker's trial.

Walker argues that the statement should not have been admissible because it was obtained in violation of his right to be free from unreasonable searches, his right to privacy and his right to effective assistance of counsel. His basic claim is that while he was in jail he had no safe place to keep personal documents, particularly communications to his attorney, and had no way to keep his possessions away from Travelstead. Walker recognizes that Travelstead was not a state agent. However, he argues that there was sufficient state action to require suppression of the statement because: (1) the state was responsible for his lack of privacy; (2) the state used the statement at trial; (3) the state ultimately rewarded Travelstead for his testimony and the statement. Walker relies on *United States v. Hinckley*, 672 F.2d 115 (D.C.Cir.1982). In that case prison guards searched Hinckley's cell and seized a written statement by Hinckley. The district court suppressed the

statement and the court of appeals affirmed.

The *Hinckley* case is easily distinguishable in that search and seizure of the documents was done by the prison guards, whereas in Walker's case the search and seizure was by an inmate. Travelstead's testimony, apparently the only testimony on this issue, was to the effect that he acted on his own without any encouragement from state officials. Furthermore, Walker's argument is weakened in two other respects by Travelstead's testimony. Travelstead testified that Walker did not write this statement for his attorney. According to Travelstead, Walker intended to use the written statement at a press conference where there would be no attorneys. The purpose of the statement was to be an attempt to clear Hopkins. Second, it appears from Travelstead's testimony that prisoners did have access to a locked box where they could put valuables or personal materials. The record therefore supports the conclusions that Travelstead was not a state agent, that Walker's statement was not intended as a communication to his attorney, and that Walker did have access to a secure place to put personal property. We conclude the trial court did not err in denying Walker's motion to suppress.

## SENTENCING ISSUES

The trial judge, S.J. Buckalew, sentenced Walker to eighty-nine years in prison. He sentenced Walker to forty years each on the two kidnapping counts, six years on the robbery, one year each on the two theft counts and two years on the burglary. All the sentences were consecutive except for one of the theft counts which was concurrent with the burglary count.

■ Walker first contends that the consecutive sentences were in violation of the double jeopardy clauses of the United States and Alaska Constitutions. U.S. Const. amend. V, Alaska Const. art. 1 § 9. He argues that Walker's acts were one transaction and that he should not have been convicted for multiple crimes. We believe that it is clear that Walker's crimes

constituted different offenses. He could be convicted and sentenced consecutively for two counts of kidnapping because there were different victims. *See Cooper v. State,* 595 P.2d 648, 650 (Alaska 1979); *Davenport v. State,* 543 P.2d 1204, 1210 (Alaska 1975). In addition, Walker may be convicted of and sentenced consecutively for crimes which arise out of the same transaction as long as the conduct can be separated into crimes involving sufficiently different societal interests and criminal intent. *Calder v. State,* 619 P.2d 1026, 1028 (Alaska 1980). We believe that the crimes for which Walker was convicted meet this test. Walker was convicted of stealing property from the Walatka residence. The robbery involved the separate act of forcing Mrs. Walatka to withdraw money and taking the money from her. The kidnapping involved restraining Mrs. Walatka and Herbert Oakley. The restraint involved in the kidnapping was substantial and is separable from the other crimes. *Lacy v. State,* 608 P.2d 19, 23 (Alaska 1980); *State v. Occhipinti,* 562 P.2d 348, 351 (Alaska 1977). We conclude that Judge Buckalew did not err in imposing consecutive sentences.

■ Walker argues that Judge Buckalew did not make specific findings for giving consecutive sentences. However, no findings to explain the consecutive sentences were necessary here because the total sentence did not exceed the possible ninety-nine year sentence on a single conviction, the kidnapping conviction. The question for us is not whether there were sufficient findings to justify the consecutive sentences but whether the total sentence was properly justified. *Mutschler v. State,* 560 P.2d 377, 381 (Alaska 1977); *Lacquement v. State,* 644 P.2d 856, 862 (Alaska App.1982).

■ Walker contends that Judge Buckalew in essence sentenced him for murder even though the jury acquitted him of that charge. He argues that Judge Buckalew did not properly consider the *Chaney* criteria and in particular ignored his potential for rehabilitation. *State v. Chaney,* 477 P.2d 441 (Alaska 1970). He argues that the

ultimate sentence of eighty-nine years was excessive.

We believe that the record reflects the fact that Judge Buckalew properly considered the jury's verdict and that he sentenced Walker for what he found was a particularly serious kidnapping which resulted in the death of two people, not for the murder charge of which Walker was acquitted. It is clear from Judge Buckalew's sentencing remarks that he believed that Walker had committed murder in the first degree, but his other remarks indicated that he accepted the jury's verdict.

Walker argues that at the time of the crime he was nineteen years old, the convictions were his first offenses and a sentence should have placed more weight on his potential rehabilitation. Judge Buckalew, however, placed great weight on the fact that at a minimum, Walker knew the kind of problems which were likely to result when he went to the Walatka residence with his armed friends. Judge Buckalew also reasoned that once Walatka and Oakley were being driven back from the bank, Walker had to know that those people were going to be killed. We believe that Judge Buckalew could properly consider this crime to be an extremely aggravated kidnapping. Severe sentences have formerly been imposed in aggravated cases of kidnapping. For instance, in *Morrell v. State,* 575 P.2d 1200, 1213 (Alaska 1978), the defendant received a life sentence with ten years consecutive to that sentence for a kidnapping and rape. The court apparently considered the case aggravated because Morrell held his victim eight days and raped her repeatedly. We note that in that case the victim was released and had not suffered serious physical injury. In *Hintz v. State,* 627 P.2d 207, 210–11 (Alaska 1981) the defendant kidnapped, robbed, and raped a woman. The trial court sentenced Hintz, who was twenty-one and had a prior burglary conviction, to life with a twenty-year sentence consecutive to the life sentence. The supreme court reduced that sentence to a total sentence of thirty years. The *Hintz* case was aggravated by the fact that he released his

victim with few clothes, at a secluded spot on a highway in minus thirteen degree weather. However, it is important to note that in the *Hintz* case the victim did not die or suffer serious physical injury. We believe Judge Buckalew could properly consider Walker's case to be an extremely aggravated kidnapping because even if Walker did not intend the death of the two victims, their death was highly foreseeable. We conclude the sentence was not clearly mistaken.

The conviction and sentence are AFFIRMED.