Randy G. DAVIS, Appellant,

v.

STATE of Alaska, Appellee.

No. 5100.

Court of Appeals of Alaska.

May 21, 1981.

---

Christopher E. Zimmerman, Fairbanks, for appellant.

Natalie K. Finn, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., SINGLETON, J., and ROWLAND, Superior Court Judge.

## OPINION

BRYNER, Chief Judge.

Appellant, Randy G. Davis, was convicted following a jury trial in Fairbanks of kidnap and rape. He was sentenced to serve twenty years for the kidnapping and fifteen years for the rape; the sentences were to run concurrently. Davis appeals from his conviction and sentences.

Davis first contends that the superior court improperly denied his motion for

judgment of acquittal as to the kidnapping charge.[1] This motion was based on the argument that the prosecution failed to produce sufficient evidence of an abduction by Davis and, further, that even assuming adequate evidence of an abduction, there was insufficient proof of unlawful intent on Davis' part.[2]

In reviewing the denial of a motion for judgment of acquittal, we must consider the evidence and the reasonable inferences arising therefrom in the light most favorable to the state, and in so doing we must determine if fair-minded jurors in the exercise of reasonable judgment could differ on the question whether guilt has been established beyond a reasonable doubt. *Eben v. State*, 599 P.2d 700, 704 (Alaska 1979); *Bush v. State*, 397 P.2d 616, 618 (Alaska 1964). Further, in determining sufficiency of the evidence we must consider the entire record, not just the prosecutor's case-in-chief, regardless of when the motion for judgment of acquittal was made. *Freeman v. State*, 486 P.2d 967, 969 (Alaska 1971); *Martin v. City of Fairbanks*, 456 P.2d 462, 464 (Alaska 1969).

The evidence at trial was conflicting. The state's case was based primarily on the testimony of two witnesses: one was the victim, M. M., a seventeen-year-old girl at the time of the offense; the other was John Smith, a friend of Davis' who had initially been indicted together with him on the rape and kidnapping charges. Davis presented a conflicting version of the incident which gave rise to the charges. For the purposes of considering the sufficiency of the evidence on the charge of kidnapping, we will summarize the evidence at trial as it appears when viewed in the light most favorable to the state.

On June 22, 1979, Davis and his friend, John Smith, were driving in the vicinity of University Avenue in Fairbanks. They were in a pickup truck owned by Davis; Smith was driving as a favor to Davis, whose license had recently been suspended for driving while intoxicated. Though driving, Smith considered Davis to be in control; Davis was "calling the shots" as to where he and Smith drove.

At about 10:30 or 11:00 p. m., Davis and Smith noticed a car at the side of the road with its hood up; the driver, who was alone, was standing nearby. Davis instructed Smith to pull over and stop, and both exited to offer assistance to the driver of the stalled car, M. M. Davis and Smith unsuccessfully attempted to start the car, so Davis offered M. M. a ride home.

M. M. climbed into the cab of the truck, taking a seat in the middle between Davis and Smith. She asked to be taken to her brother's house on Farmer's Loop Road, where she was staying for the summer, and Smith drove in that direction.

Almost immediately, Davis began making advances toward M. M. by reaching his arm behind her back and over her shoulder and placing his hand inside her shirt, next to her breast. As they continued to drive, Davis became increasingly more aggressive and overt in his assault of M. M. M. M. resisted, making "all kinds of panicky appeals" to Davis. Smith's attention was devoted to the road, and the truck's stereo was on, so his awareness of what was occurring between M. M. and Davis was limited.

1. Davis does not challenge the sufficiency of the evidence with respect to his conviction of rape. Davis was convicted of kidnapping under former AS 11.15.260, which provided:

   *Kidnapping.* A person who knowingly and without lawful reason kidnaps, abducts or carries away and holds for ransom, reward or other unlawful reason another person, except in the case of a minor by his parent, is punishable by imprisonment for a term of years or for life.

2. AS 11.15.260 requires the proof of three essential elements: (1) The prosecution must show an abduction or carrying away; in other words, a physical movement of the victim from one place to another, commonly referred to as asportation. (2) The abduction must be against the wishes of the victim; accordingly, the prosecution must show that it was accomplished by force or deceit. (3) Finally, the prosecution must show that the intent of the accused is to hold the victim for ransom, reward, or some other specific unlawful purpose. *See generally Levshakoff v. State*, 565 P.2d 504 (Alaska 1977). Here, Davis' challenge to the sufficiency of the evidence is directed at the first and third elements listed.

Before reaching the home of M. M.'s brother, Smith noticed that the truck was low on gas and pointed this out to Davis, who indicated that they should continue on, without stopping, to a station at the far end of Farmer's Loop Road. M. M. was aware that the truck belonged to Davis and got the "strong impression" that Davis was in control and intended her to accompany them to the station, whether she wanted to or not.

As Davis' pickup approached the house of M. M.'s brother, she made several requests to stop. Smith only heard one of the requests and, in response, began to slow down and pull over. At that point, Davis specifically directed Smith to continue on without stopping, so Smith kept going.

After passing M. M.'s home, Smith turned off Farmer's Loop Road onto a small, isolated dirt road. No discussion between Smith and Davis preceded this action, and Smith testified that he left the main road in search of a place to urinate. Smith claimed that he suffered from a kidney ailment which required him to urinate frequently and that this ailment was aggravated by drinking. Smith drove for some distance on the small road, finally stopping the truck in a secluded location. He immediately left the truck, walked away, and proceeded about his business.

As soon as the truck stopped, Davis attacked M. M. in earnest. After a brief, violent struggle, M. M. was placed in the back of the truck by Davis. Davis proceeded to rape M. M., forcing her to have both oral and vaginal intercourse with him. M. M. thereafter managed to leave the scene on foot, making her way to her brother's home, where she immediately called the police.

In addition to testimony concerning the abduction and rape of M. M., the jury was also permitted to hear testimony by Smith concerning two recent and very similar incidents involving sexual assaults by Davis upon young women. The first incident occurred when Davis, accompanied by Smith, offered a ride home to a woman who was leaving work at a Fairbanks bar early in the morning. On this occasion, Davis drove his pickup, Smith sat on the passenger side of the vehicle and the woman sat in the middle. Upon departing the bar, Davis began to touch the woman so that she became upset and insisted on getting out of the truck. Smith asked Davis several times to stop the truck so that he could urinate, but Davis continued his driving and his assaultive behavior. After repeated requests, Davis finally stopped to let Smith out, and the woman fled from the truck after Smith, quickly catching a ride back in the opposite direction. Davis was furious with Smith: he tried to run him over with the truck and then hit him several times, yelling "Why in hell didn't you slam the door on her?"

The second incident related by Smith involved a woman hitchhiking to the university campus in Fairbanks. This time Davis was on the passenger side and Smith was driving; as usual Smith had to stop to urinate. He drove behind the university, and as he stopped Davis started to paw the young woman, tearing off her coat. As Smith exited the truck, the woman managed to jump out and run off. Davis subsequently confronted Smith for not preventing the woman's escape; this confrontation ended with Davis fighting Smith over his actions in allowing the woman to escape.

In his testimony at trial, Smith indicated that these two prior situations gave him a good idea of what would transpire between Davis and M. M. once he left the truck to urinate. Smith explained that the two beatings which he had previously received from Davis, coupled with his knowledge that Davis had placed a loaded pistol in the glove compartment of the truck, were the primary reasons for his failure to take any action to prevent M. M. from being raped.

■ Viewing the totality of the evidence in the light most favorable to the state, as summarized above, we conclude that there was ample proof to justify reasonable jurors in concluding beyond a reasonable doubt that Davis was guilty of kidnapping M. M., since the jury could properly have found that all elements of the crime of kidnapping were established.

Asportation was established by the testimony concerning Davis' ownership of and control over the truck and by the testimony that Davis specifically instructed Smith to continue driving without stopping at the home of M. M.'s brother. The element of force necessary to a kidnapping charge was implicit in the situation in which M. M. found herself: seated in a moving truck between two individuals, both refusing even to acknowledge her repeated requests to be released, and one actively engaged in the preliminaries of a sexual assault. As to the requisite element of intent, the testimony concerning Davis' treatment of M. M., both before and after passing her brother's home without stopping, speaks for itself. This conduct, taken together with Davis' specific order for Smith to continue driving beyond the home of M. M.'s brother, the evidence concerning Davis' prior sexual assaults of a similar nature, and Davis' awareness of Smith's frequent and predictable need to stop and urinate, provided convincing evidence that Davis' abduction of M. M. was motivated specifically by his desire to rape her.[3] We thus conclude that no error was committed when the trial court denied Davis' motion for judgment of acquittal.

Davis next argues that Smith's testimony concerning the similar assaults previously committed against other women by Davis, as well as cross-examination of Davis concerning these assaults, was improperly admitted. Smith's testimony in this regard and the state's cross-examination of Davis occurred only after Davis, on the stand in his own behalf, testified that he had had intercourse with M. M., but that the intercourse was consensual. We disagree with Davis' argument that the evidence of the prior assaults was more prejudicial than probative.

■ Admissibility of this evidence is governed by Rule 404(b) of the Alaska Rules of Evidence, which provides:

(b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In the present case, when Davis took the stand and testified that he had engaged in sexual intercourse with M. M., but that the intercourse was consensual, he affirmatively and specifically placed in issue his intent. Given this testimony, the highly probative nature of the evidence concerning recent, similar assaults by Davis is manifest, and the trial court's decision allowing the evidence to be heard by the jury was not an abuse of discretion. *Freeman v. State*, 486 P.2d 967, 977–78 (Alaska 1971); *Williams v. State*, 603 P.2d 694 (Nev.1979). *See also Vessell v. State*, 624 P.2d 275, 278 (Alaska 1981); *Dorman v. State*, 622 P.2d 448, (Alaska 1981); *Buchanan v. State*, 599 P.2d 749, 751 (Alaska 1979); *Demmert v. State*, 565 P.2d 155 (Alaska 1977).[4]

Davis additionally makes a two-fold argument focusing on the contention that he

---

**3.** Our discussion in the text assumes that the jury believed Smith's testimony in its entirety, including Smith's statement that he and Davis had not discussed the possibility of abducting M. M. before they picked her up, and that he (Smith) had made the decision to turn off Farmer's Loop Road in order to urinate entirely on his own. However, given the unusual nature of Smith's version of the circumstances, the testimony that on other occasions involving sexual assaults by Davis, Smith had also provided Davis with an excuse to stop by claiming that he needed to urinate, and the obvious fact that Smith may have been motivated to minimize the extent of his participation because he was originally indicted with Davis on the same charges, we believe that the jury could alterna-

tively have rejected Smith's testimony that M. M.'s abduction was not preplanned. The totality of the circumstances could have led reasonable jurors to conclude beyond a reasonable doubt that Davis and Smith had discussed abducting M. M. before she got into the truck and that the entire episode was preconceived.

**4.** For example, in *Freeman v. State*, 486 P.2d at 978, the court stated:

Within the context of a sex related offense, the classic example of proper use of prior misconduct as proof of intent is where the accused admits the act charged, but claims to have had a benign intent.

was denied his right to a speedy trial under Alaska R.Crim.P. 45.[5] He first argues that the court erred in granting a continuance to the prosecution so that it could obtain M. M.'s presence at trial; Davis contends that the trial court granted a continuance based upon the state's mere assertion, inadequately corroborated, that M. M. was ill and unable to travel to Alaska for the originally scheduled trial date. Second, Davis contends that in any event the length of the continuance granted by the court exceeded the length justified by M. M.'s illness, and that as a consequence trial was set beyond the 120-day period provided for in Rule 45(b).

We have examined the record, and we find that it fails to support either of Davis' arguments. It is undisputed that the 120-day period provided for by Criminal Rule 45 commenced on June 23, 1979, the date of Davis' arrest. It is similarly uncontested that, properly computed, the 120-day rule would originally have expired on October 21, 1979. Trial was originally scheduled on October 8, 1979, well within the 120-day period provided for. On October 3, 1979, the prosecution moved to continue the trial because word had been received from M. M.'s mother that M. M., who lived in Maryland, had mononucleosis and would be too sick to travel to Alaska for a few weeks. A hearing was held on the state's motion; at the time, the state had been unable to reach M. M.'s physician for confirmation. Davis objected to any continuance on the basis that, without confirmation from a reliable third party such as M. M.'s doctor, due diligence in obtaining M. M. as a witness could not be established, and no continuance would be warranted.[6] Contrary to Davis'

argument on appeal, however, the trial court did not grant the state's motion for continuance at the October 3 hearing. Instead, the court agreed with the position taken by Davis and indicated that a continuance would be granted only if a representative of the state could obtain confirmation of M. M.'s illness and her inability to travel from her physician by noon the next day (October 4). Davis' counsel acquiesced to this ruling, and voiced no objection to the court's specific instructions that, in the event the state obtained corroboration from M. M.'s physician, both the court and Davis' counsel could be informally notified.

On the following day, October 4, 1979, the district attorney's office made a confirming call to M. M.'s physician, who indicated that M. M. was in fact ill and that it would be best for her not to travel for a period of at least one month. Because the court had provided that the state could transmit information concerning its contact with M. M.'s physician informally, the record does not unequivocally indicate that the court was immediately informed as to the statements of M. M.'s physician. However, details of the state's contact with M. M.'s physician were appropriately made part of the record when the state's investigator, who talked to M. M.'s physician, filed an affidavit concerning his conversation of October 4. The affidavit was filed on October 9. In the meanwhile, on October 5, the day following the state's call to M. M.'s physician, the court entered an order granting the state's motion for a continuance. On October 11 a confirming letter from M. M.'s physician was received and made part of the record.

5. Alaska R.Crim.P. 45 generally requires trial in criminal cases to be held within 120 days of commencement of prosecution, but a number of specific periods are excluded from computation of the 120-day period. *See* Alaska R.Crim.P. 45(d).

6. The relevant portion of Rule 45 is found in subsection (d) of the rule which provides in part:

    (d) *Excluded Periods.* The following periods shall be excluded in computing the time for trial:

. . . .

    (3) The period of delay resulting from a continuance granted at the timely request of the prosecution, if:

    (a) The continuance is granted because of the unavailability of evidence material to the state's case, when the prosecuting attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at the later date . . . .

Especially given Davis' failure to object to the informal procedure established by the trial court, we must conclude that the only inference which can fairly be drawn from the record is that the court's order of continuance on October 5 was based upon specific information provided by the state indicating that M. M.'s physician had been contacted and had corroborated the fact of her inability to travel due to illness.

A similar inference arises with respect to the reasonableness of the length of the continuance granted by the court. While the initial information received by the state from M. M.'s mother indicated that she would be able to travel to Alaska in time for the trial to begin on Monday, October 22, 1979 (only one day beyond the original 120-day period), M. M.'s physician stated both in his telephone call with the prosecution and in his subsequent confirming letter that a one-month period of convalescence from October 4 would be required. After granting the state's motion for continuance, the court ordered trial to commence on November 5, 1979. The date of the trial setting, under the circumstances, obviously reflects the court's consideration of and deference to the opinion of M. M.'s physician as to when she would be sufficiently healthy to travel to Alaska.

Under the circumstances set forth above, we conclude that the action of the court, both in granting a continuance to the state and in establishing the period of this continuance, was fully justified under the provisions of Criminal Rule 45(d)(3)(a).

Davis' final argument is that the sentences imposed by the court for his convictions of rape and kidnapping were excessive. Davis principally contends that the superior court placed undue emphasis on the nature of the offenses, giving too little regard to his potential for rehabilitation. He argues that the court misapplied the sentencing criteria established by *State v. Chaney*, 477 P.2d 441, 443–444 (Alaska 1970), by giving too much weight to isolation of the offender and reaffirmation of societal norms.

■ However, the priority and relationship of the *Chaney* criteria are properly questions for the trial court to determine. *Asitonia v. State*, 508 P.2d 1023, 1026 (Alaska 1973); *Nicholas v. State*, 477 P.2d 447, 448 (Alaska 1970). In the absence of clear mistake, the sentences imposed by the trial court must stand. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

■ The supreme court has repeatedly held that "violent crimes involving physical injury to innocent people are to be regarded as our most serious offenses and are not to be treated lightly." *Ahwinona v. State*, 598 P.2d 73, 77 (Alaska 1979) (footnote omitted). The offenses which Davis has committed clearly fall within this category. In fashioning a sentence in this case, the court properly considered, among other things, Smith's testimony concerning Davis' prior similar sexual assaults. *Nukapigak v. State*, 562 P.2d 697 (Alaska 1977), aff'd on rehearing, 576 P.2d 982; *Hunter v. State*, 590 P.2d 888, 902 (Alaska 1979); *Evans v. State*, 550 P.2d 830, 847 (Alaska 1976). Additionally, it was appropriate for the court, in gauging the weight realistically to be accorded to Davis' rehabilitation, to take into account its belief that Davis had falsely testified in his own behalf and, further, that he had refused to accept responsibility or accountability for his conduct at the time of sentencing. *La Pierre v. State*, 626 P.2d 1065 (Alaska, 1980); *Fox v. State*, 569 P.2d 1335 (Alaska 1977).

Furthermore, the court correctly noted as aggravating factors the age and inexperience of the victim in this case, as well as her total innocence. Also aggravating the circumstances were Davis' violent treatment of M. M. and his possession in the glove compartment of his truck of a loaded pistol. The pistol, though neither used nor mentioned, substantially increased the potential for severe physical injury to M. M. and was at least in part responsible for the reluctance of Davis' companion, Smith, to intercede in attempting to prevent Davis' actions.

Given the foregoing circumstances, neither Davis' exemplary military record, nor

the fact that he is technically a first offender is determinative. *Compare Bryant v. State*, 623 P.2d 310 (Alaska 1981).

In this case, Davis was sentenced to fifteen years for rape and twenty years, to run concurrently, for kidnapping. As to the sentence for rape, we believe it to be clearly justified in light of the specific circumstances of the case and given prior holdings of the supreme court. *See, e. g., Tuckfield v. State*, 621 P.2d 1350, 1353–54 (Alaska 1981); *Coleman v. State*, 621 P.2d 869, 886–87 (Alaska 1980); *Lacy v. State*, 608 P.2d 19 (Alaska 1980); *Post v. State*, 580 P.2d 304 (Alaska 1978); *Morrell v. State*, 575 P.2d 1200 (Alaska 1978). We emphasize in this case that which has often been repeated by the supreme court in sentence appeals involving similar issues:

> [F]orcible rape ranks among the most serious crimes. The reason such a crime is most serious is because it amounts to a desecration of the victim's person which is a vital part of her sanctity and dignity as a human being. Although the perpetrator of such a crime may not be beyond rehabilitation, which the judge recognized in this case, the crime itself deserves community condemnation; in addition to serving rehabilitative purposes the sentence must reflect such condemnation as well as act as a deterrent to the offender and to others.

*Newsom v. State*, 533 P.2d 904, 911 (Alaska 1975).

We similarly do not believe the separate sentence imposed by the court for kidnapping to be clearly mistaken. Although at first glance it may appear that the offense of kidnapping was merely incidental to the rape, the appearance does not bear up to scrutiny. As has previously been held, "the offense of kidnapping violates not only the victim's safety but also her personal liberty . . . ." *State v. Occhipinti*, 562 P.2d 348, 351 (Alaska 1977). It is important to consider the fact that only by means of kidnapping M. M. was Davis able to follow through with his plan to rape her. Though the period of the abduction in this case was not extensive, neither was it minimal. As the victim of the kidnapping, M. M. was rendered helpless and resorted to repeated entreaties for release, all of which were disregarded. Once Davis' truck had passed the home of her brother and turned onto an isolated dirt road, M. M., in her own words, "kind of figured I was a goner by that time . . . ." The anguish, fear and mental suffering of a young victim deprived of her liberty and forcibly abducted by a man bent on committing the crime of rape is as inimical to the values of our society and as potentially devastating in terms of its consequences to the victim as the actual rape itself. We believe that the trial court recognized these considerations in imposing a separate sentence for kidnapping which in effect added an additional five years to the sentence imposed for the rape.

Having independently reviewed the record in this case, we are unable to conclude that the sentences imposed by the superior court for kidnap and rape were clearly mistaken.[7]

Accordingly, the judgment and sentences of the superior court are AFFIRMED.

---

7. We note that the court had before it a psychological evaluation indicating that Davis fell into the category of "antisocial persons with antisocial personalities . . .," and diagnosing him to have a psychopathic personality. Moreover, the total sentence imposed by the court was consistent with the recommendation contained in the presentence evaluation prepared by the Office of Probation and Parole.