**STATE of Alaska, Appellant,**

v.

**Robert F. LUPRO, Appellee.**

**No. 5473.**

Court of Appeals of Alaska.

June 25, 1981.

Anne Carpeneti, Asst. Atty. Gen., Juneau, Daniel W. Hickey, Chief Prosecutor, Juneau, and Wilson L. Condon, Atty. Gen., Juneau, for appellant.

William F. Brattain, Fairbanks, for appellee.

1. Former AS 11.15.080.

2. Former AS 28.35.060.

3. Lupro and an alibi witness testified that Lupro left his van, which was proven to be the vehicle that struck Jacobsen, at a bar near the intersection where the accident was later to occur. They testified that the alibi witness drove Lupro around in the witness's truck the

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Robert Lupro was convicted of negligent homicide[1] and failure to render assistance to a person injured in an accident.[2] He was ultimately sentenced to two concurrent five-year suspended sentences. He was placed on formal probation for one year and open court probation for the remaining four years. Lupro was required to perform 1,000 hours of community service work and his driver's license was limited so that he could drive only for employment purposes during the one year of formal probation. The state has appealed this sentence on the ground it is too lenient. We agree.

On November 14, 1974, Lupro, driving while highly intoxicated, struck a pedestrian, Elmer Jacobsen. Lupro fled from the scene, leaving Jacobsen unconscious. Jacobsen was found by witnesses shortly after the accident but died later in a Seattle hospital from his injuries. The doctor who performed the autopsy on Jacobsen indicated that his injuries were consistent with being hit by a vehicle traveling at a high rate of speed.

When Lupro testified at his trial in November 1975, he denied that he struck Jacobsen.[3] The jury rejected Lupro's testimony and convicted him of both charges, negligent homicide and failure to render assistance to a person injured in an accident. At Lupro's sentencing in May 1976, the trial judge balanced the seriousness of Lupro's offenses, against the fact that Lupro was twenty-five and had no criminal record. The court concluded that Lupro had lied in

rest of the evening. Lupro's van was found upside down and abandoned where it had been pushed over a thirty-foot embankment. Lupro's theory at trial was thus that someone had stolen his van, hit Jacobsen, and then later pushed the van over the embankment. *See Lupro v. State*, 603 P.2d 468, 471, 475 (Alaska 1979).

his trial testimony and found that this was a negative factor in evaluating his potential for rehabilitation.[4] Lupro was sentenced to five years with four years suspended and his driver's license was revoked for two years. This sentence was stayed while Lupro appealed his conviction to the Alaska Supreme Court. As a condition of the stay Lupro was to report regularly to a probation officer and his driver's license was limited so that he could drive only when it was required by his employment.

Lupro's conviction was affirmed by the supreme court in November of 1979.[5] Lupro filed a motion for reduction of sentence under Alaska R.Crim.P. 35(a). A second sentencing hearing took place in July of 1980, nearly six years after the offenses. The trial court granted the motion and reduced the sentence to two concurrent five-year suspended sentences. Lupro was placed on one year formal probation and four years of open court probation. During the one year of formal probation his driver's license was limited to driving for employment purposes only. He was required to perform 1,000 hours of community work. In arriving at his sentence the trial judge considered many factors which weighed in Lupro's favor. During the nearly six years since the accident Lupro had been on probation supervision. His driver's license had been restricted during this time and he had reported to a probation officer on a regular basis. Lupro had no criminal violations during this period and he had remained employed and been a hard working, productive member of society. By the time of the second sentencing Lupro acknowledged his responsibility for killing Jacobsen. The trial judge also considered the fact that since his conviction Lupro had married and his wife and young child were dependent upon him and would suffer from his incarceration. The trial judge concluded that Lupro

had rehabilitated himself and that requiring him to serve a sentence in jail would not serve any purpose.

We agree that there was substantial evidence in the record to show that Lupro was not a danger to the public and that a sentence requiring incarceration was not required to rehabilitate Lupro since any necessary rehabilitation had been accomplished by the time Lupro's motion to reduce his sentence was granted. We recognize that this makes incarcerating an offender like Lupro a difficult task, particularly when much of the hardship of that incarceration would fall upon his family.

■ However, we feel that Lupro's offenses required a significant period of incarceration. In *Layland v. State*, 549 P.2d 1182, 1184 (Alaska 1979), the supreme court emphasized that vehicular homicide is a serious offense which would require a substantial sentence:

> Recent statistics indicate that thousands of innocent people are killed or seriously injured nationwide each year by automobile drivers who take to the road in spite of the fact that they are highly intoxicated. Unlike many crimes, the victim has no way of protecting himself. While vehicular homicide does not require a criminal intent, the fact that a loss of life is involved compels us to consider it among the most serious offenses. The unique nature of the offense mandates that the trial court, in fashioning a sentence, place heavy emphasis on societal condemnation of the conduct and the need to protect society.

In *Layland* the court upheld an eight-year sentence.[6] In *Godwin v. State*, 554 P.2d 453 (Alaska 1976), the supreme court upheld a sentence of ten years with five years suspended for a manslaughter charge a vehicular homicide which arose from a charge of

---

4. The supreme court characterized Lupro's testimony at trial as "highly improbable." *Lupro v. State*, 603 P.2d at 479.

5. Neither Lupro nor the state appealed Lupro's original sentence.

6. Layland, however, unlike Lupro, had two prior convictions for operating a motor vehicle under the influence of alcohol, a violation of AS 28.35.030. One of these convictions was for an incident which occurred after the accident for which Layland was sentenced. *Layland v. State*, 549 P.2d at 1183.

operating a motor vehicle while under the influence of alcohol. The defendant in that case several years previously had been convicted of several driving offenses including negligent driving and reckless driving, and a year before the accident had been put on probation for two years for a conviction of breaking and entering. The court upheld the sentence, stating:

> In this case, there is every reason to believe that Mr. Godwin has been impressed with the seriousness of his offense, and that in view of his family situation and employment record, the likelihood of rehabilitation would be excellent without any substantial period of incarceration. In any case involving loss of life, however, and particularly in an offense involving driving while under the influence of alcohol, major considerations are the goals of deterrence of other members of the community and community condemnation of the offender and the offense so as to reaffirm societal norms and to maintain respect for those norms. [footnotes omitted].

*Id.* at 455.

The supreme court in other sentence appeals has upheld severe sentences for cases involving vehicular homicide.[7] We conclude that in spite of the many factors in favor of giving Lupro a lenient sentence, a significant amount of incarceration was required

in this case.[8] Although we appreciate and sympathize with the trial court's emphasis on rehabilitation, we believe that the trial court did not give sufficient attention in its sentence to deterrence of others and community condemnation.

We disapprove of the sentence imposed as being too lenient.[9]

---

7. *See, e. g., Rosendahl v. State*, 591 P.2d 538, 539 (Alaska 1979) (ten year concurrent sentences upheld for negligent homicide and failure to render assistance to an injured person; defendant had a "significant driving offense record which includes both alcohol and non-alcohol related offenses"); *Gullard v. State*, 497 P.2d 93 (Alaska 1972) (ten-year sentence for manslaughter upheld, although the supreme court disapproved any restriction on parole eligibility. Subsequent to the accident but before sentencing Gullard was twice convicted of operating a motor vehicle while under the influence of alcohol in violation of AS 28.35.030. *Gullard was nineteen years old.)*

We note that the legislature has imposed a mandatory minimum term of three days in jail for a first offender who is convicted of operating a motor vehicle under the influence of alcohol. A second offender receives a mandatory minimum sentence of ten days in jail. AS 28.35.030.

8. Given the aggravating circumstances surrounding the initial offense we believe that any term of imprisonment less than three years to serve would have been too lenient at initial sentencing. Even giving Lupro maximum credit for post-trial rehabilitation, we believe that reducing his sentence below one year to serve on the motion to modify resulted in too lenient a sentence.

9. In a sentence appeal brought by the state on the ground that the sentence is too lenient, we are not authorized to increase the sentence but may express our approval or disapproval of the sentence. AS 12.55.120(b). The standard we apply on review of any sentence is whether the sentence is clearly mistaken. *State v. Lancaster*, 550 P.2d 1257, 1260 (Alaska 1976); *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).