Harris **NYLUND**, Appellant,

v.

**STATE of Alaska**, Appellee.

**No. A–1029.**

Court of Appeals of Alaska.

March 28, 1986.

Carol Greenberg, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Harris Nylund was convicted, following a jury trial, of kidnapping, AS 11.41.-300(a)(2)(B). Judge Gerald J. Van Hoomissen sentenced Nylund to fifty years with five years suspended. Nylund appeals his conviction and sentence. We affirm Nylund's conviction but reverse his sentence.

On December 18, 1984, Harris Nylund went to the Fred Meyer store in Fairbanks. At the same time, a seven-year-old girl, R.B., and her mother were shopping in the same store but had become separated. Nylund encountered the little girl and somehow convinced her to accompany him. Apparently, R.B. thought Nylund was taking her to her family car, because when Nylund walked R.B. past the car, she started to scream. Nylund thereupon dragged the screaming girl to his car. He bound her arms with strapping tape and put R.B. in the car. R.B. momentarily escaped, but Nylund caught her and placed her back in his vehicle.

Meanwhile two bystanders, Gary and Dana Vedder, heard R.B.'s screaming and approached. Gary Vedder asked Nylund what was going on. Nylund told Vedder not to get involved. While they were talking, R.B. managed to escape again. Vedder slammed the car door on Nylund's leg. Nylund then got in the car and drove away.

The Vedders provided police with a description of Nylund and his vehicle. Based on the description, a composite drawing of Nylund was made. The composite was published in the local newspapers and hung in shopping malls. The media covered the case extensively, describing the police as engaged in a "manhunt." Articles regarding "how to protect your child" were run concurrently with articles about the incident and manhunt. In all, twelve newspaper articles were run prior to Nylund's arrest, and the composite drawing had been published in the newspaper and was displayed in shopping malls. In addition, several radio and television stories covered the offense, and a "crimestoppers" re-enactment was run on television. Nylund eluded the police for two weeks. He was eventually arrested and indicted for kidnapping.

## CHANGE OF VENUE

Based upon the pretrial publicity, Nylund moved to change venue both prior to and following jury *voir dire.* Judge Van Hoomissen denied these motions. Nylund argues that Judge Van Hoomissen erred in denying his change of venue motions.

A change of venue should be granted by the trial judge where it is necessary to ensure the defendant's right to be tried by an impartial jury. *See* U.S. Const. amend. VI; Alaska Const. art. 1, § 11. Alaska Statute 22.10.040 provides that the trial judge "may change the place of trial in an action ... when there is reason to believe that an impartial trial cannot be had...." On appeal, we are to reverse the trial judge's denial of a change of venue motion when we find that the trial judge abused his discretion. *Oxereok v. State,* 611 P.2d 913, 919 (Alaska 1980).

A trial judge "will seldom be found to have abused his discretion in denying a motion for change of venue prior to jury

*voir dire." Chase v. State,* 678 P.2d 1347, 1350 (Alaska App.1984). In *Mallott v. State,* 608 P.2d 737 (Alaska 1980) the supreme court set out the standard which a trial judge should apply in deciding whether to grant a change of venue following *voir dire:*

> The ultimate burden imposed on a defendant by the Supreme Court with respect to transfer of venue has been to demonstrate that pre-trial publicity actually resulted in "a partiality that could not be laid aside" in those jurors finally seated to adjudicate guilt or innocence. *Murphy v. Florida,* 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589, 595 (1975). Under such a standard Mallott's claim would most certainly fail, since he cannot and does not maintain that the *voir dire* examination of his jury panel revealed even a shred of evidence that any of the impaneled jurors were predisposed to convict him.

> As we have noted above however, the *voir dire* process is not an infallible Geiger counter of juror prejudice, and to rely excessively on its efficacy in uncovering "actual prejudice" places an unrealistic burden on a defendant. Where there has been intensive pre-trial publicity, and a substantial number of venirepersons appear to have been prejudiced by the publicity, the probability that similar prejudices are shared by, but have not been extracted from, impaneled jurors cannot be ignored. We therefore adopt the A.B.A. proposal that

> > A motion for change of venue or continuance shall be granted whenever it is determined that, because of the dissemination of potentially prejudicial material, there is a substantial likelihood that, in the absence of such relief, a fair trial by an impartial jury cannot be had ... A showing of actual prejudice shall not be required.

*Id.* at 748, *citing* ABA Standards Relating to the Administration of Criminal Justice,

Fair Trial and Free Press § 8–3.3(c) (2d ed. Approved Draft 1978).

▮ Forty-two jurors were examined in this case, and all but one had some prior knowledge of the case. However, almost all of the jurors questioned indicated that they could be fair and impartial. The jurors questioned did not appear to be unduly influenced by the pretrial publicity.

This case appears to us to be similar to *Chase v. State,* 678 P.2d 1347 (Alaska App. 1984). The defendant in *Chase* was charged with raping and then killing a sixteen-year-old girl. An autopsy showed that Chase's victim had been severely beaten and had chemical burns on her skin. There was a significant amount of publicity about the offense. Chase's motion for change of venue was denied. In holding that the trial judge did not abuse his discretion in refusing to grant a change of venue, we noted that the jurors who tried Chase indicated that they could be fair and impartial. *Id.* at 1351. We considered the fact that the publicity which preceded the trial consisted of reports on the nature of the charges and the fact that Chase admitted the killing. *Id.* at 1352. We noted that the information to which the jurors had been exposed was not "highly significant information, such as the existence or contents of a confession, or other incriminating matters that may be inadmissible in evidence, or substantial amounts of inflammatory material...."[1] Chase essentially admitted the facts of the case but contended that he did not intend to kill the victim so that he was guilty of the lesser offense of manslaughter.

▮ In the present case, like *Chase,* the reports in the press consisted of facts which were largely conceded at trial. In both cases, although some prospective jurors were naturally concerned about the nature of the charges themselves, this concern did not appear to have been exacerbated by the nature of the pretrial publicity. We conclude that Judge Van Hoomissen

---

**1.** The quote is from *Mallott v. State,* 608 P.2d 737, 747 (Alaska 1980) quoting ABA Standards Relating to the Administration of Criminal Jus-tice, Fair Trial and Free Press § 8–3.5(b) (2d ed. Approved Draft 1978).

did not err in refusing to grant Nylund's motion for a change of venue.[2]

## SENTENCE

■ Nylund argues that his sentence of fifty years with five years suspended is excessive. At the time of this offense, Nylund was twenty-eight years old. This was his first felony conviction. Nylund had formerly been convicted of two misdemeanor offenses. In 1977, he received a small fine and a suspended sentence for interfering with a police officer. In 1984, he was convicted of shoplifting and was sentenced to ten days, with seven days suspended, and twenty-four hours of community service work. Nylund has a juvenile record. He was declared a delinquent for two offenses which would have been burglaries if they were adult offenses. Judge Van Hoomissen found that Nylund's prospects for rehabilitation were questionable based upon Nylund's history of abuse of alcohol and drugs and based upon psychiatric opinions that Nylund is an antisocial personality.

In sentencing Nylund, Judge Van Hoomissen properly considered the kidnapping of a young girl to be a particularly serious offense. Nylund, however, points to previously decided sentence appeals in arguing that his sentence is excessive. We agree with Nylund that his sentence is excessive and order his sentence reduced to thirty years.

In reaching the decision that Nylund's sentence must be reduced to thirty years, we find *Hintz v. State*, 627 P.2d 207 (Alaska 1981) and *Tookak v. State*, 648 P.2d 1018 (Alaska App.1982), to be persuasive. In *Hintz* the defendant kidnapped a woman as she left a department store, drove her to an isolated area, and raped her at gunpoint. The defendant then abandoned the victim on the highway with little clothing in minus thirteen degree weather. The defendant was twenty-one at the time of the crime and had a prior conviction for burglary. *Hintz*, 627 P.2d at 210. The defendant was sentenced by the trial court to a life sentence on the kidnapping charge, and twenty years, to be served consecutively, for the rape charge. The supreme court found that Hintz was not a worst offender and ordered his sentence reduced to a total of thirty years. *Hintz*, 627 P.2d at 211.[3]

The defendant in *Tookak* was convicted of kidnapping and rape and the trial court sentenced him to a total of forty-one years. Tookak was twenty-five at the time of the offenses and had previously been convicted of two felonies, grand larceny and burglary not in a dwelling. In addition, Tookak had been involved in unlawful activities since age ten and had a "prolonged history of antisocial activity." *Tookak*, 648 P.2d at 1023. We compared Tookak's crime and record to that of Hintz and concluded that Tookak's record was worse than Hintz' but that Hintz' crime was more serious. We concluded that Tookak should receive a similar sentence to the one which Hintz received and ordered Tookak's sentence reduced to thirty years. *Tookak*, 648 P.2d at 1024.

Although we certainly consider this kidnapping of a young child to be a serious offense, we also consider Hintz' and Tookak's offenses to be serious. Those cases

---

**2.** Nylund objects to the fact that Judge Van Hoomissen took over questioning of the jurors on *voir dire*. However, the trial judge has discretion to conduct the *voir dire* examination. Alaska R.Crim.R. 24; *Bolhouse v. State*, 687 P.2d 1166 (Alaska App.1984). The test which we apply in deciding whether the trial judge properly exercised his discretion in conducting jury *voir dire* is: "considering the totality of the questions permitted, did counsel gain enough specific information to intelligently exercise challenges for cause and enough general information to exercise peremptory challenges." *Id.* at 1172. In this case, as in *Bolhouse*, the questions which the trial judge asked were similar to the questions which counsel asked. It appears to us that the questioning was sufficient to allow counsel to intelligently exercise challenges for cause and peremptory challenges. We note that the trial judge did offer to allow defense counsel to submit written questions to the court. The court offered to ask those questions if they were appropriate. *See* Alaska R.Crim.P. 24.

**3.** Justices Matthews and Rabinowitz dissented in *Hintz*. They would have ordered Hintz' sentence reduced to twenty years. *Id.* at 211.

appear to us to set a reasonable limit on the sentence which Nylund should receive. We therefore find that the sentence imposed in this case is clearly mistaken. On remand, we order the court to impose a sentence not to exceed thirty years.[4]

The conviction is AFFIRMED. The sentence is VACATED and the case is REMANDED for sentencing.

---

**4.** In order to put the severity of Nylund's sentence in perspective, we note that normally a person convicted of second-degree murder should receive a sentence of from twenty to thirty years. *Page v. State,* 657 P.2d 850, 855 (Alaska App.1983).