**Michael D. GARRISON, Appellant and Cross–Appellee,**

v.

**STATE of Alaska, Appellee and Cross–Appellant.**

**No. A–1757/90.**

Court of Appeals of Alaska.

Oct. 14, 1988.

Susan Orlansky, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant and cross-appellee.

Nancy R. Simel, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee and cross-appellant.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Michael D. Garrison was convicted, following a jury trial, of kidnapping, AS 11.41.300(a)(1)(C), assault in the first degree, AS 11.41.200(a)(2), and sexual assault in the first degree, AS 11.41.410(a)(1). Superior Court Judge Henry C. Keene, Jr., sentenced Garrison to twelve years for the kidnapping, seven years for the first-degree assault, and ten years for the first-degree sexual assault. Judge Keene imposed these sentences concurrently. Garrison thus received a total sentence of twelve years to serve. Garrison appeals his conviction and the state appeals Garrison's sentence. We affirm Garrison's conviction and his sentence.

### CO-COUNSEL STATUS

At trial Garrison was represented by a public defender. Following jury *voir dire* Garrison asked to be able to participate as co-counsel in the trial. In making his application to Judge Keene, Garrison indicated that he wanted to make sure that all the issues that he wanted raised in the trial would be raised, and he also wanted the opportunity to cross-examine some of the witnesses. In ruling that Garrison could not act as co-counsel, Judge Keene stated that neither the United States Constitution nor the Alaska Statutes provided that a person had a right to both representation by an attorney and self-representation simultaneously. The judge pointed out that if Garrison were allowed to ask questions, he might be able to get his statements before the jury without being subject to cross-examination. He also indicated that, if Garrison had any problems with his public defender concerning trial strategy, he would allow Garrison to take up such matters outside of the presence of the jury.

On appeal Garrison argues that Judge Keene erred in denying his request to act as co-counsel. Garrison cites *Cano v. Anchorage*, 627 P.2d 660 (Alaska App.1981). In *Cano*, the defendant indicated on the day of trial that he wished to represent himself on charges of attempting to elude a

police officer and reckless driving. Cano indicated that although he intended to conduct the trial himself, he wished to have his public defender available for consultative purposes. The trial judge indicated that Cano had to choose between representing himself or being represented by an attorney. Cano chose to represent himself. The trial judge allowed Cano's public defender to sit in the back of the courtroom with the understanding that she would not participate in the proceedings, and that there would be no extra recesses so that Cano could consult with her. Cano was allowed to consult with counsel only during ordinary recesses.

On appeal, this court held that the trial judge had erred in not recognizing that he had discretion to allow hybrid representation. We stated: "In the exercise of sound legal discretion, a court must consider the alternatives available to it and choose among them. When the trial court fails to recognize the alternatives from which it may choose, it cannot be said that discretion was in fact exercised." 627 P.2d at 663. Garrison argues that in his case, as in *Cano*, the trial judge did not exercise proper discretion because the court failed to consider the available alternatives.

We consider *Cano* to be distinguishable from the present case. In *Cano*, the defendant was acting as his own counsel, which he has a right to do. *Faretta v. California*, 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975); *McCracken v. State*, 518 P.2d 85, 91 (Alaska 1974). When defendants choose to represent themselves, however, they are at a severe disadvantage because self-representation is usually disruptive of the proper function of the judicial process. *See Burks v. State*, 748 P.2d 1178, 1182–83 (Alaska App.1988) (Coats, J., dissenting). In *Cano*, we recognized the broad discretion which the trial court possesses to regulate trials

and to control the conduct of counsel in the courtroom. 627 P.2d at 664. We could not see why, however, Cano should not have been allowed to consult with his attorney on a regular basis during the trial. Allowing Cano to have full access to counsel probably would have resulted in a more fair and orderly trial. We therefore reversed the trial court because it did not even consider this alternative.

We see Garrison's case, however, as being very different from *Cano*. Unlike *Cano*, Garrison was not representing himself at trial. Garrison was represented by an attorney. *See Ortberg v. State*, 751 P.2d 1368, 1375 (Alaska App.1988). Therefore, Garrison was not engaged in an unequal contest at trial wherein he would be pitting himself against an attorney. Moreover, in *Cano*, there was every reason to believe that the trial would be better conducted if Cano had ready access to an attorney. The opposite is true, however, in Garrison's case. Garrison's participation as co-counsel would probably be somewhat disruptive. Judge Keene considered the reasons which Garrison gave for wanting to act as co-counsel, and he addressed Garrison's concerns by making sure that Garrison knew that he would be able to consult fully with his attorney during trial.

A defendant has a constitutional right to counsel. U.S. Const. amend. VI; Alaska Const. art. 1, § 11. The right to self-representation is also constitutionally protected. U.S. Const. amend. VI; Alaska Const. art. 1, § 21. The right to participate as co-counsel or have hybrid representation, however, is not protected. "The trial court has broad discretion to deny hybrid representation or co-counsel status." *Ortberg*, 751 P.2d at 1375. Accordingly, we conclude that the trial court did not err in denying co-counsel status in this case.[1]

1. Although we believe that the trial court could also have properly denied Garrison's request for co-counsel status had the motion been made well before trial, we note the timing of Garrison's motion. The motion for co-counsel status was not made until after jury *voir dire*. The lateness of Garrison's motion gave the trial

court no time either to familiarize itself with the law in this area or to consider fully Garrison's motion for co-counsel status. Thus, the timing of Garrison's motion, as well as the merits, invited the somewhat summary response which the trial court was forced to render in the middle of trial.

## THE SENTENCE

We next address the state's contention that Garrison's sentence of twelve years' imprisonment was too lenient. When the state appeals a sentence on the ground that it is too lenient, this court has jurisdiction to review the sentence pursuant to AS 22.07.020(b) and (d). If we find that the sentence is too lenient, we may disapprove of the sentence. This court has no authority, however, to increase a sentence appealed by the state on the ground that it is too lenient. The standard that we apply in determining whether a sentence is too lenient is the clearly mistaken standard.

The victim of Garrison's crimes, C.D., was a young woman. According to C.D., Garrison offered her a ride in his pickup truck. C.D. declined and continued walking. Garrison, however, forced C.D. into the truck by pulling her hair. Garrison then slashed and stabbed C.D. with a knife, cutting her across the face and cutting her throat, back, and thigh. Garrison drove C.D. to a secluded area, where he sexually assaulted her.

Following the sexual assault, Garrison's truck became stuck when he attempted to back away from the wooded area where he had parked. An occupant of one of the homes across the street called the police and Garrison was arrested. C.D. was taken to the hospital.

At the hospital, the treating physician reported that C.D. had been stabbed in the thigh, which caused internal bleeding. C.D. had also been cut superficially three times on the right cheek, had a cut on the right shoulder blade, and had received a four-centimeter deep laceration to her neck. The throat wound was potentially life-threatening because the cut was very close to the jugular vein, the carotid arteries, and the trachea. All of the wounds resulted in scars that are permanent and disfiguring. At sentencing, C.D. testified that she had gone through severe emotional trauma as a result of the kidnapping and assault.

At trial, Garrison admitted assaulting C.D., but denied kidnapping or sexually assaulting her. According to Garrison, he had been drinking throughout the day and had taken three or four Dilaudids, a synthetic heroin-like narcotic. Garrison testified that C.D. asked him for a ride, and he allowed her to ride in his pickup. C.D. agreed to accompany him to drink alcohol and to smoke marijuana. Garrison testified that he got lost because of his intoxicated condition and eventually got stuck in the mud. Garrison got out of his truck to assess the situation, but when he returned, he could not find his money or marijuana. Assuming that C.D. had taken them, he became extremely angry and began stabbing her. Garrison claimed that, because of his alcohol and drug intoxication, he did not know what he was doing at the time.

At the time of this offense, Garrison was twenty-four years old. He had no significant prior record, although he did have a pending driving while intoxicated charge at the time of sentencing. Garrison also had a significant history of alcohol and drug abuse. He had been discharged from the military because of drug and alcohol use, and he had failed twice in drug and alcohol treatment programs.

In sentencing Garrison, Judge Keene indicated that he considered Garrison's offenses to be extremely aggravated. He emphasized the brutality of the offense and the physical and psychological damage to the victim. In imposing the twelve-year term, Judge Keene indicated that the sentences were to be presumptive and that Garrison was not eligible for parole.

In arguing that the sentence which Judge Keene imposed for Garrison's crimes was too lenient, the state has cited us to several cases in which Alaska appellate courts have found that more severe sentences, for arguably similar crimes, were not clearly mistaken. For instance, in *Hintz v. State*, 627 P.2d 207, 210–11 (Alaska 1981), Hintz kidnapped a woman as she was leaving a shopping center, drove her to an isolated area, and raped her at gunpoint. He then abandoned her on a deserted stretch of highway, with very little clothing, in minus thirteen-degree weather. Hintz was twenty-one years old at the time of the offense. His only prior offense had

been a prior conviction for burglary. The trial judge sentenced Hintz to life imprisonment for kidnapping and to a consecutive twenty-year sentence for rape. *Id.* at 210. The supreme court, however, found this sentence to be clearly mistaken, and ordered the sentence reduced to a total of thirty years. *Id.* at 211.

In *Davis v. State*, 635 P.2d 481, 487–88 (Alaska App.1981), this court found that a sentence totalling twenty years for kidnapping and rape was not clearly mistaken. Davis was a young man with no prior criminal record and an exemplary military record. Davis abducted and forcibly raped M.M., a seventeen-year-old girl. Davis had a loaded pistol in the glove compartment of his truck at the time of the kidnapping and rape, but the weapon was not used or mentioned to the victim. *Id.* at 487. There was substantial evidence that Davis had attempted to sexually assault two other women on different occasions.

*Hintz* is distinguishable to some degree from Garrison's case because Hintz had a prior burglary conviction. *Davis*, on the other hand, could be distinguished because of the evidence that Davis had engaged in similar behavior on other occasions. Yet, basically, these cases demonstrate that the appellate courts of this state have affirmed sentences significantly greater than the sentence which Garrison received. Therefore, it seems clear that this court would not have found a sentence of twenty years for Garrison's offenses to be excessive.

It does not follow, however, that a sentence of twelve years is too lenient. Sentencing is primarily a trial court function. It is an individualized process, and appellate courts have traditionally deferred to the trial judge's superior opportunity to evaluate the offender and the offense. Sentence review, therefore, is primarily a safety valve; it is an opportunity to correct sentences which deviate too far from the norm. This court disapproves a sentence only when it finds that the sentence is clearly mistaken. We have thus repeatedly pointed out that application of this standard results in a wide range of sentences which are within the trial court's discretion. *Covington v. State*, 747 P.2d 550, 554 (Alaska App.1987); *State v. Krieger*, 731 P.2d 592 (Alaska App.1987);[2] *Langton v. State*, 662 P.2d 954, 962–63 (Alaska App. 1983).

This court and the Alaska Supreme Court have frequently considered the ABA Standards for sentencing procedures which state that a sentence ought not to exceed ten years except in unusual cases, and that normally a sentence should not exceed five years. *See* III *Standards for Criminal Justice* § 18–2.1 and commentary at 52 (1982). This guideline is certainly an indicator that a sentence in excess of ten years is a severe sanction. Furthermore, in this case, Garrison's parole eligibility was restricted. Thus, Judge Keene recognized the serious nature of Garrison's offense, and the sentence imposed was sufficiently substantial to reflect community condemnation. In spite of the serious nature of Garrison's offense and his guarded prospects for rehabilitation given his long-term drug abuse, this was Garrison's first criminal offense. Accordingly, we conclude that the sentence was not clearly mistaken.

The conviction and sentence are AFFIRMED.

SINGLETON, Judge, concurring.

I agree with Judge Coats' resolution of the "co-counsel" issue and further agree that a composite sentence of twelve years for kidnapping, first-degree physical assault, and first-degree sexual assault was not too lenient. As the supreme court has made clear, it is not the appellate court's function to impose sentence or to specify a specific sentence appropriate for a specific case. *See State v. Graybill*, 695 P.2d 725,

---

2. *Krieger* illustrates the sentencing ranges which the appellate courts of this state allow. A jury convicted Krieger of murder in the second degree. Krieger had no prior record. The trial judge sentenced Krieger to fifteen years with seven years suspended. The state appealed, arguing the sentence was too lenient. We held that a sentence of less than ten years' incarceration was clearly mistaken. We indicated, however, that "a sentence more closely approximating the typical twenty- to thirty-year sentence for second-degree murder would have been preferable." *Id.* at 596–97.

729 (Alaska 1985) (trial court has primary responsibility to determine appropriate sentence).[1] Rather, our sentence review power is limited to determining a range of appropriate sentences for offenders whose conduct and background are roughly equivalent and then comparing the sentence under review to that range to determine whether it is within or without the range, i.e., too severe or too lenient. *See, e.g., McClain v. State,* 519 P.2d 811 (Alaska 1974), where the court said:

> In review of sentences imposed by a lower court, this court has formulated different standards of appellate review. The most common formulations are the

clearly mistaken test and the zone of reasonableness test. Under the clearly mistaken test, the sentence will be modified only in those instances where the reviewing court is convinced that the sentencing court was clearly mistaken in imposing a particular sentence. In the zone of reasonableness test, the reviewing court should determine whether the lower court imposed a sentence within the range of alternatives which comport with the *Chaney* guidelines. Both tests require us to make an independent review of the record.

Implementation of these two formulations reveals a similar analytical frame-

---

1. In the eighteen years since the supreme court announced the birth of sentence review in *State v. Chaney,* 477 P.2d 441, 441–44 (Alaska 1970), the appellate courts of Alaska have never found a sentence in excess of ten years too lenient and have only once found a sentence too lenient because it was less than ten years. *State v. Krieger,* 731 P.2d 592, 596–97 (Alaska App.1987) (sentence of less than ten years clearly mistaken for second-degree murder when defendant motivated by jealousy broke into his wife's paramour's house and executed him when he found them engaged in intercourse). *Cf. Martin v. State,* 664 P.2d 612, 620 (Alaska App.1983) (twenty-year minimum term for first-degree murder not unconstitutional even though defendant motivated by jealousy executed her lover).

If we ignore *Krieger,* a murder case, the appellate courts of Alaska have never disapproved a sentence of five years or more of incarceration as too lenient for a crime of violence. Only in cases imposing a sentence of five years or less has the sentence been disapproved as too lenient. *See State v. Wassilie,* 578 P.2d 971, 974 (Alaska 1978) (disapproving total sentence of eighteen months for assault with a dangerous weapon, forcible rape, and assault with intent to commit rape); *State v. Abraham,* 566 P.2d 267, 271 (Alaska 1977) (defendant convicted of manslaughter for beating his wife to death, held: five years with four years suspended too lenient); *State v. Lancaster,* 550 P.2d 1257, 1260 (Alaska 1976) (two-year sentence too lenient for two counts of forcible rape of fifteen-year-old niece occurring on successive days); *State v. Armantrout,* 483 P.2d 696, 698 (Alaska 1971) (three-year suspended sentence for assault resulting in serious physical injuries too lenient); *Chaney,* 477 P.2d at 477 (concurrent one-year terms for two counts of forcible rape and one count of robbery too lenient); *State v. Brinkley,* 681 P.2d 351, 358 (Alaska App.1984) (sentence of less than three years too lenient for typical rape under former law); *State v. Woods,* 680 P.2d 1195, 1197–98 (Alaska App.1984) (sentence

of less than eighteen months too lenient for multiple instances of sexual abuse not constituting rape under former law); *State v. Lamebull,* 653 P.2d 1060, 1062 (Alaska App.1982) (defendant convicted of vehicular manslaughter; court held five-year suspended imposition of sentence too lenient and one year to serve minimum permitted under the facts); *State v. Jensen,* 650 P.2d 422, 425 (Alaska App.1982) (straight probation with no incarceration too lenient for robbery and attempted rape); *State v. Lupro,* 630 P.2d 18, 20–21 (Alaska App.1981) (defendant was convicted of negligent homicide and failure to render assistance; initial sentence of five years with four years suspended was found too lenient, minimum sentence permissible was one year to serve). *Cf. State v. Afcan,* 583 P.2d 849, 851 (Alaska 1978) (concurrent sentences of five years for knife assaults on two people neither excessive nor too lenient); *State v. Doe,* 647 P.2d 1107, 1108–11 (Alaska App.1982) (sentence of less than ninety days too lenient where mother passively aided her husband in a protracted course of sexual abuse of their children); *State v. Ahwinona,* 635 P.2d 488, 490 (Alaska App. 1981) (sentence of less than four years' incarceration too lenient where defendant, with prior manslaughter conviction, assaulted two people with a knife and inflicted permanent disabling injuries on one of them).

These cases, when viewed together, suggest that sentences of straight probation are too lenient for serious crimes of violence, but that a sentence of five years or more would not be too lenient for even the most serious crimes of violence short of murder. Naturally, presumptive sentences will alter this analysis and may, in cases such as this one, require a sentence substantially in excess of five years' imprisonment. It is important to stress, however, that it is presumptive sentencing and not the *Chaney* criteria which would appear to require sentences in excess of five years for first felony offenders convicted of violent crimes less than murder.

work which accounts for their combined use in some cases. Analytically, the clearly mistaken test implies a permissible range of reasonable sentences which a reviewing court, after an independent review of the record, will not modify. The zone of reasonableness merely describes that range of reasonable sentences which after an independent review of the record will not be modified by the reviewing court.

. . . .

In order to avoid the understandable confusion resulting from the use of two standards to describe the same analytical process in the area of sentence appeals, we now adopt the clearly mistaken test [as the proper descriptive phrase] in the review of sentence appeals.

*Id.* at 813–14 (citations omitted).[2] Obviously, reasonable judges could differ as to an appropriate sentence for Garrison. He committed a particularly serious offense, and the legislature has prescribed a very broad range of appropriate sentences. Nevertheless, in determining an appropriate sentence, the trial court should be governed by the principle of parsimony. *See, e.g., Pears v. State,* 698 P.2d 1198, 1204–05 (Alaska 1985) (court should impose the least severe sentence capable of satisfying the *Chaney* criteria). Sentences in the ten- to fifteen-year range must be reserved for the most serious offenders committing the most serious offenses. *See, e.g., Graybill,* 695 P.2d at 729; *Covington v. State,* 747 P.2d 550, 553 (Alaska App.1987); *Mosier v. State,* 747 P.2d 548, 549 (Alaska App.1987). Such a sentence will virtually always satisfy the *Chaney* criteria of rehabilitation, deterrence of the defendant and others, and affirmation of community norms. Longer sentences usually serve the sentencing goal of isolation which is reserved for persistent recidivists and antisocial personalities. *See Pruett v. State,* 742 P.2d 257, 264 (Alaska App.1987); *Skrepich v. State,* 740 P.2d 950, 956 (Alaska App.1987) (lack of prior conviction precludes confident prediction that defendant cannot be deterred or rehabilitated by short prison sentence).[3]

Recognizing a ten- to fifteen-year sentencing range for an offense as serious as one involving both rape and kidnapping

---

**2.** The *McClain* court cautioned:

> The type of analysis involved in both of these formulations should not be confused with the abuse of discretion test. In the abuse of discretion test the reviewing court will sustain the lower court's sentence merely if some of the evidence supports the sentencing court's determination. An independent examination of the entire record is not a part of this test. Because of the limited review inherent in the abuse of discretion test this court in [a prior decision] rejected its application to sentence appeals.

519 P.2d at 813.

The "clearly mistaken" test approved in *McClain* would appear to be identical to the "clearly erroneous" test adopted in *Alaska Food, Inc. v. American Mfrs. Mut. Ins. Co.,* 482 P.2d 842, 848 (Alaska 1971). This test applies generally to review of trial court findings in criminal cases, except on the ultimate issue of guilt or innocence. *Esmailka v. State,* 740 P.2d 466, 470 (Alaska App.1987). What I understand the supreme court to be saying, in context, when it contrasts the clearly msitaken test with the abuse of discretion test, is that a sentence which viewed in isolation might be reasonable will nevertheless be rejected on sentence review if it is outside an appropriate range of sentences imposed on similar individuals committing similar crimes.

**3.** There is a certain built-in unfairness in our recognition of a five-year sentencing range, *i.e.,* ten to fifteen years' incarceration for aggravated offenses for defendants whose conduct and backgrounds are virtually indistinguishable. As we previously noted:

> Each year in prison is a very long time for the person who must serve it and [sentence offenders] could well argue that, under a system that seeks to insure uniformity and avoid disparity in sentencing, it is not fair that [some] serve five more years than [others].

*Covington,* 747 P.2d at 553–54. The clearly mistaken test when properly applied by a reviewing court still leaves substantial disparity among sentences imposed on those similarly situated. *Id.* at 554. *See also Langton v. State,* 662 P.2d 954, 962–63 (Alaska App.1983). If I read *Covington* and *Langton* correctly, what we said in those cases is that any sentence imposed within a proper range is an equivalent sentence for purposes of sentence review, *i.e.,* that a ten-year sentence, a twelve-year sentence, and a fifteen-year sentence imposed on similarly situated sexual offenders are equivalent sentences immune from sentencing review because they fall within "a permissible range of reasonable sentences which a reviewing court, after an independent review of the record, will not modify." *McClain,* 519 P.2d at 813.

would not be inconsistent with prior cases. For example in *Lacy v. State*, 608 P.2d 19, 23 (Alaska 1980), the defendant kidnapped two women at gunpoint in their own car at an Anchorage nightclub, drove them to a secluded spot, raped one woman and attempted to rape the other. As a result, he was convicted of one count of rape under former AS 11.15.120; two counts of assault with a dangerous weapon in violation of former AS 11.15.220; two counts of kidnapping in violation of former AS 11.15.260; and one count of petty larceny in violation of AS 11.20.140. The supreme court upheld his concurrent sentences of fifteen years' imprisonment for rape, fifteen years' imprisonment for each kidnapping count, five years' imprisonment for each assault with a dangerous weapon count, and six months' imprisonment for petty larceny. *See also Johnson v. State*, 662 P.2d 981, 990 n. 8 (Alaska App.1983) (concurrent sentences of fifteen years with five years suspended for kidnapping and rape, where defendant had prior felony conviction, affirmed); and *Williams v. State*, 652 P.2d 478 (Alaska App.1982) (concurrent sentences for kidnapping and rape totaling twenty years with five years suspended affirmed).

Nevertheless, I agree with Chief Judge Bryner that the broad category of conduct included within the kidnapping statute, coupled with the substantial sentencing range from five to ninety-nine years, and the fact that kidnapping convictions will typically include conviction for other violent crimes, potentially resulting in consecutive sentences, justifies our establishing criteria appropriate to composite sentences for kidnapping and ancillary offenses. In order to arrive at an appropriate range of sentences, it seems to me that it is necessary to review the history of kidnapping statutes. When we do so, it becomes clear the legislature has provided Draconian penalties for kidnapping in order to address a number of related concerns.

First, and foremost, is the fear that lesser penalties for kidnapping than for murder would encourage assailants to abduct their victims, kill them, and hide the bodies in order to minimize the risk of a murder conviction. While it is not necessary that the authorities find the body of the victim in order to establish an element of the crime, *i.e.*, the *corpus delicti*, the state's burden of proving murder is substantially increased if the body cannot be found. Even when a body is found, the circumstances of the death may be ambiguous if the defendant has taken the victim to a secluded spot in order to decrease the state's ability to prove murder. Thus, it appears that the primary reason for having parallel sentencing provisions for second-degree murder and kidnapping is to deal with situations where the victim has been killed, but the kidnapping serves to obscure the circumstances surrounding the killing. I would agree, however, that the legislature's concerns in establishing Draconian penalties for kidnapping were not absolutely limited to situations of obscured murder. Kidnappings for substantial ransom or terrorist kidnappings to obtain political or social advantage may appear extremely attractive to potential kidnappers. By providing for sentences in the twenty- to ninety-nine-year range, the legislature might have hoped to discourage this kind of highly profitable activity. Furthermore, such sentences might also be appropriate for assailants who literally "enslave" their victims and hold them incommunicado for a substantial period of time. *See, e.g., Morrell v. State*, 575 P.2d 1200 (Alaska 1978).

I would therefore suggest limiting composite sentences in excess of twenty years to cases involving obscured murder, kidnapping for ransom, terrorist kidnapping for political or social advantage, or enslavement.[4]

---

4. The assumptions in this concurring opinion regarding the legislature's motivation for making kidnapping an unclassified offense find support in the commentary to *Model Penal Code* Part II, Art. 212 (1980). I recognize that the Model Penal Code and the tentative draft seek to address the problems noted in this concurrence by subdividing kidnapping into a number of related offenses of greater or lesser seriousness. The Alaska legislature did not follow this approach, apparently preferring to allow the courts to establish appropriate sentencing ranges for the various kinds of conduct that satisfy the statutory definition.

What is an appropriate range for sentences in those cases where the defendant kidnaps the victim in furtherance of some other offense, yet significantly confines the movement of the victim beyond the time necessary to commit the ancillary offense? Likewise, what is the appropriate range when the kidnapping results in serious injury to the victim? At the outset, it is clear that kidnapping, rape, and first-degree [physical] assault, although committed as part of a single continuous transaction, constitute three distinct offenses, each of which violates separate societal interests for which it is appropriate to impose distinct sentences, even though the kidnapping is only a prelude to the commission of the other offenses. *See State v. Occhipinti ex rel. Levshakoff,* 562 P.2d 348, 351 (Alaska 1977). Having established the propriety of imposing separate sentences, however, we are still left with the question of what is an appropriate range of sentences for the entire conduct, *i.e.,* an appropriate composite sentence. The authority to impose consecutive sentences does not answer this question. *See, e.g., Jones v. State,* 744 P.2d 410, 414–15 (Alaska App. 1987) (Singleton, J., concurring).

It seems to me that the most appropriate approach in such cases is to view the kidnapping as an aggravator of the ancillary offense. *See, e.g., Barry v. State,* 675 P.2d 1292, 1297 (Alaska App.1984). In cases of kidnapping for purposes of rape, the kidnapping would serve to aggravate the rape, and justify a sentence for a first felony offender in the ten- to twenty-year range, similar to the range which we recognized for aggravated instances of rape in *State v. Andrews,* 707 P.2d 900, 913–17 (Alaska App.1985), *aff'd,* 723 P.2d 85 (Alaska 1986). Where the kidnapping involves a physical assault and results in serious physical injury, then the kidnapping would aggravate the physical assault and an unsuspended sentence of up to ten years would be appro-

priate for a first felony offender. *Pruett,* 742 P.2d at 264. Longer sentences would be reserved for those with prior felony convictions. In cases such as this, where the assailant is a first felony offender and the victim suffers serious physical injury, *i.e.,* permanent disfigurement and a sexual assault, a sentence in the range of ten to twenty years would not be clearly mistaken.[5]

In testing this approach against the reported cases it is important to bear one thing in mind. Garrison is a first felony offender. Generally, substantial sentences in excess of ten years are reserved for recidivists. *Graybill,* 695 P.2d at 731. Those convicted of offenses involving both rape and kidnapping who received sentences in excess of the ten- to fifteen-year benchmark for aggravated rape have usually been felony recidivists. *Hintz v. State,* 627 P.2d 207 (Alaska 1981); *Post v. State,* 580 P.2d 304 (Alaska 1978); *Andrejko v. State,* 695 P.2d 246 (Alaska App. 1985); *Patterson v. State,* 689 P.2d 146 (Alaska App.1984); *Baker v. State,* 655 P.2d 1324 (Alaska App.1983); *Tookak v. State,* 648 P.2d 1018 (Alaska App.1982).

Four cases involving longer sentences for first felony offenders are distinguishable. In *Nylund v. State,* 716 P.2d 387 (Alaska App.1986), the defendant's kidnapping of a seven-year-old girl was frustrated only when bystanders intervened. The trial judge sentenced Nylund to fifty years with five suspended. *Id.* at 390. We reduced the sentence to not exceed thirty years. *Id.* at 391. The thirty-year sentence was justified because Nylund's case involved a very young girl. In determining Nylund's sentence, we relied in part on *Hintz,* in which the defendant kidnapped a woman, raped her at gunpoint, and left her with little clothing in minus thirteen-degree weather. *Hintz,* 627 P.2d at 211. Thus, the court may have feared Nylund would

**5.** Chief Judge Bryner is probably correct that the reported cases suggest a range of fifteen to twenty-five years for offenses involving both kidnap and rape. These cases, however, distort the appropriate range for a number of reasons: (1) they all involve cases in which the defendant appealed a sentence contending that it was ex-

cessive. In none of the reported cases is there a suggestion that a substantially shorter sentence would have been too lenient, (2) most involve recidivists, and (3) where first offenders are involved, there is either conduct bordering on an attempted murder, a substantial risk of "enslavement," or a serial rape.

have killed his victim or retained her for a substantial period as in *Morrell*.

In *Barry*, the defendant received concurrent sentences of twenty years for marginal kidnapping and twenty years with five suspended for sexual assault. Although Barry did not appeal his kidnapping sentence, this court held that a total sentence of twenty years was not clearly mistaken. *Barry*, 675 P.2d at 1297.

In *Davis v. State*, 635 P.2d 481 (Alaska App.1981), this court approved concurrent sentences of twenty years kidnapping and fifteen years for rape. Davis, however, had developed a pattern of seeking out vulnerable women for attack. Fear that Davis was a potential serial rapist no doubt explains his severe sentence. *Id.* at 487–88. This is made clear when *Davis* is compared with *Goolsby v. State*, 739 P.2d 788 (Alaska App.1987). Goolsby, a first felony offender, was sentenced to thirty-seven years with twelve suspended for multiple sexual assaults. He was not convicted of kidnapping. *Id.* at 789–90. Nevertheless, his sentence greatly exceeded sentences that had previously been approved for aggravated sexual assaults. It would appear that Goolsby's Draconian sentence was justified by the trial court's implicit belief, shared by the appellate court, that Goolsby was a serial rapist. *Id.* at 789–90. When

comparing *Davis* and *Goolsby*, it is apparent that Davis' potential for serial rape, not the kidnapping, explains Davis' severe sentence.

Finally, in *Wilson v. State*, 670 P.2d 1149 (Alaska App.1983), the defendant received a composite thirty-year sentence for kidnapping and sexual assault. Wilson and a confederate not only sexually assaulted and beat their victim, they also abandoned her, leaving her naked and unconscious in thirty-degree temperature. *Id.* at 1154–55. [6]

## CONCLUSION

A composite sentence of twelve years is within a permissible range of sentences for Garrison's offenses. I would not disapprove a sentence of up to twenty years, but the sentence imposed is not clearly mistaken.[7]

BRYNER, Chief Judge, concurring in part and dissenting in part.

I join in the majority opinion affirming Garrison's conviction but dissent from its decision to affirm his sentence.

Garrison was convicted of three separate crimes: kidnapping, sexual assault in the first degree, and first-degree assault. Kidnapping and sexual assault in the first de-

---

**6.** The state relies on *Wilson* and two other cases in which sentences in excess of twelve years were approved for sexual assaults resulting in serious physical injury. The latter two cases did not involve kidnapping. *Helmer v. State*, 616 P.2d 884 (Alaska 1980) (twenty-five year composite sentence approved for sexual assault and attempted murder); *Hasslen v. State*, 667 P.2d 732 (Alaska App.1983) (twenty-five year composite sentence approved for first-degree assault and rape where defendant shot at victim after breaking into her home and sexually assaulting her). In *Helmer, Wilson,* and *Hasslen,* the defendants attempted to kill their victims to prevent identification after completing the sexual assaults. Here, defendant threatened to kill the victim, and he seriously injured her prior to the assault, but he never attempted to kill her, and she escaped when the sexual assault was completed.

**7.** Kidnapping involving serious physical injury or sexual assault is an unclassified felony with a minimum five-year sentence and a maximum sentence of ninety-nine years. AS 12.55.125(b). When the victim is released unharmed, the of-

fense is a class A felony. AS 11.41.300(d). The maximum penalty would then be twenty years. AS 12.55.175(c). In so providing, the revised code follows Article 212 of the Model Penal Code. The obvious purpose was to encourage kidnappers to release their victims uninjured. It would be a mistake, I believe, to infer that the legislature actually intended a lesser-included offense relationship between the unclassified felony and the class A felony because of the substantial overlap in penalties. Instead, the legislature appears to have prescribed a five-year presumptive term for kidnapping when the victim suffers no harm, AS 12.55.125(c)(1), and a five-year minimum term when the victim suffers minimal harm. *See, e.g.,* AS 12.55.125(b). The treatment in the text, which reserves penalties in excess of twenty years for (1) felony recidivists, and (2) nonrecidivists who (a) kill their victims, (b) hold them for ransom, or (c) enslave them, treats the kidnapping as aggravating the ancillary offense and best reconciles all of these statutes with the applicable case law.

gree are both unclassified felonies; first-degree assault is a class A felony. Each of the three separate crimes that Garrison committed was particularly serious in its own right, apart from its relationship to his other offenses. In totality, his conduct is even more aggravated than the sum of its component parts.

For committing these offenses, Garrison received a total term of twelve years' imprisonment. This sentence falls far short of adequately reflecting the seriousness of Garrison's individual crimes and the overall seriousness of his collective criminal misconduct.

According to the evidence at trial, Garrison forcibly abducted a young female pedestrian, C.D., who was a total stranger. He drove his victim across town at knifepoint. After stabbing and cutting C.D. repeatedly, Garrison proceeded to rape her. C.D. managed to escape further harm only fortuitously, when Garrison's truck became stuck in a ditch and was reported to the police. Garrison inflicted serious physical injuries on C.D.; those injuries were potentially fatal and resulted in permanent disfigurement. Garrison was under the influence of narcotics at the time of the offense. While nominally a first offender, Garrison had been discharged from the military for drug abuse and had repeatedly failed at prior efforts to address his drug problem. In the sentencing court's own estimation, Garrison's prospects for rehabilitation were not favorable.

The total term of twelve years imposed by the sentencing court in this case exceeds by only two years the ten-year presumptive term that was applicable to Garrison by virtue of his use of a knife in committing the sexual assault on C.D. See AS 12.55.-125(i)(2). Garrison was separately subject to a seven-year presumptive term for first-degree assault. See AS 12.55.125(c)(2). Finally, the prescribed punishment for Garrison's most serious offense, kidnapping, was a minimum of five years, and a maximum of ninety-nine years. See AS 12.55.-125(b).

Perhaps the most useful and direct approach to evaluating the appropriateness of an aggregate term of twelve years for all three of these offenses would be to focus on Garrison's most serious offense, kidnapping, and to view his other crimes as aggravating that offense. See, e.g., State v. Andrews, 707 P.2d 900, 912–13 (Alaska App.1985), aff'd, 723 P.2d 85 (Alaska 1986).

The penalty provisions governing the unclassified felony of kidnapping rank it second in seriousness only to first-degree murder. The penalty provisions are identical to those that apply to second-degree murder. Second-degree murder and kidnapping were therefore deemed by the legislature to be equivalent in seriousness. By enacting a minimum term of five years for kidnapping, the legislature indicated that a five-year sentence is appropriate for the offense under the most mitigated circumstances conceivable. A typical first offender who commits a typical kidnapping should thus presumably be subject to a significantly greater sentence. For the equivalent crime of second-degree murder, this court has specified a first-offense benchmark term of twenty to thirty years' imprisonment. See Page v. State, 657 P.2d 850, 855 (Alaska App.1983).

Despite the equivalent ranking of second-degree murder and kidnapping, it would be unrealistic to expect that a typical first offender convicted of kidnapping should receive a term equivalent to the benchmark sentence for second-degree murder. The statutes prohibiting kidnapping and second-degree murder both seek to protect society against acts of serious physical violence. By definition, however, second-degree murder involves situations where the primary harm against which the law seeks to protect has already occurred, that is, the defendant has caused another person's death. All second-degree murderers are similarly situated in this regard and deserve similar treatment. Thus, if justification is to be found for the disparate sentencing of second-degree murderers, it must be sought in characteristics of the individual offender and in the distinguishing features of each offender's conduct; it will not be found in the disparity of actual harm resulting from the commission of different murders.

In contrast, a broad range of actual harm to the victim may result in cases of kidnapping. At the upper range of the spectrum, of course, a kidnapping may result in the death of the victim; in such cases, the offender would be subject to separate conviction and punishment for murder. At the lower range of the spectrum, a kidnapping may result in virtually no actual physical harm. In recognition of this, the legislature has enacted an affirmative defense reducing kidnapping from an unclassified felony to a class A felony when the defendant voluntarily releases the victim unharmed. *See* AS 11.41.300(d).

In any given case of kidnapping, the nature and extent of the harm actually inflicted on the victim is certainly a legitimate and vital consideration reflecting on the overall seriousness of the offense and, ultimately, on the appropriate sentence to be imposed. Because of the wide variety of actual harm that may result from a kidnapping, it is to be expected that, in comparison to second-degree murder, a relatively wide variety of first-offense sentences may be appropriate in kidnapping cases. By the same token, because the typical case of kidnapping involves relatively little physical harm to the victim, the appropriate term for a typical first offender should fall considerably lower than the twenty- to thirty-year benchmark term for a first offender convicted of the equally serious offense of second-degree murder.

Where the commission of a kidnapping actually results in the infliction of grave injuries to the victim, however, I can see no conceivable justification for ignoring the benchmark sentence that applies to the equivalently classified offense of second-degree murder. As with cases of second-degree murder, first-offense kidnapping sentences significantly lower than the benchmark sentence would be justified where a defendant's conduct—although resulting in actual harm—was mitigated, or where the defendant's background · indicated particularly good prospects for rehabilitation. On the other hand, it would be hard to find a plausible justification for imposing a mitigated sentence where the kidnapping resulted in serious physical injury to the victim, where the defendant's conduct in committing the offense was more serious than the norm for the offense, and where the defendant's prospects for rehabilitation were dimmer than those of a typical first offender.

This is precisely the situation in Garrison's case. By any conceivable standard, Garrison committed a particularly aggravated kidnapping. Garrison's conduct in committing the kidnapping was hardly *de minimus;* although he did not confine his victim for a prolonged length of time, Garrison forcibly abducted C.D. and transported her at knifepoint to a secluded area across town for purposes of committing a sexual assault. In terms of the statutory definition of the offense, this conduct amounts to far more than a technical kidnapping. The actual harm caused by Garrison's conduct goes far beyond the harm inflicted in a typical kidnapping case. Not only did Garrison rape his victim at knifepoint, but he also stabbed and cut her, repeatedly and apparently gratuitously, inflicting injuries that could well have taken C.D.'s life. Moreover, the fortuitous circumstances of C.D.'s rescue suggest that she was in peril of suffering even more serious harm. Finally, by the sentencing court's own estimate, Garrison's prospects for rehabilitation appear to be poor—certainly far worse than the typical first offender.

Given the obviously aggravated nature of Garrison's conduct, the extent of harm to the victim, and his poor rehabilitative potential, none of the circumstances that might otherwise justify mitigated treatment in a first-offense kidnapping case are present here. At the very least, Garrison should have received a term within the twenty- to thirty-year benchmark established in *Page.*

This conclusion finds direct support in *Davis v. State*, 635 P.2d 481 (Alaska App. 1981). *Davis* involved a youthful first offender with an exemplary record who abducted and raped a seventeen-year-old girl. In approving a twenty-year sentence of imprisonment in that case, this court relied in part on evidence indicating that Davis had been involved in two similar incidents. Al-

though there is no comparable evidence to indicate that Garrison has previously engaged in similar misconduct, the uniquely aggravated nature of Garrison's conduct, the injuries he inflicted on C.D., and his unpromising prognosis for rehabilitation more than offset the evidence of prior misconduct in *Davis.* Unlike *Davis,* Garrison does not have an exemplary background. His military record is poor, he has a long-term problem with narcotics and alcohol addiction, and he has repeatedly failed at rehabilitation. Davis, moreover, did not use or threaten his victim with a dangerous weapon, and he did not inflict serious physical injury in addition to the sexual assault.

It makes no sense at all to justify the disparity between Davis' twenty-year term and Garrison's twelve-year term by painting a minimalistic picture of this court's sentence review authority. The majority opinion emphasizes that "[s]entence review ... is primarily a safety valve; it is an opportunity to correct sentences which deviate too far from the norm." *Ante* at 469. While this observation is undoubtedly correct as far as it goes—that is, in pointing out that one of the basic objectives of sentence review is uniformity—it plainly begs the crucial question, which is how to determine precisely when a disputed sentence deviates "to far from the norm."

The majority's emphasis on the "wide range of sentences which are within the trial court's discretion" and on deference to "the trial judge's superior opportunity to evaluate the offender and the offense," *id.,* implies a powerlessness to act except in the most extreme instances of obvious disparity. This view of our sentence review authority, however, does substantial disservice to the relatively broad standard that was adopted by the supreme court in *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974), and that has been consistently applied since *McClain* was decided.

Under *McClain,* the applicable standard on appeal is whether a sentence is clearly

mistaken. *McClain* makes it clear that blind deference to the sentencing court's "superior opportunity to evaluate the offender and the offense" is neither required nor desirable. Rather, under *McClain,* this court has the affirmative obligation to conduct an independent review of the sentencing record in each case; the evaluation of whether the sentence is clearly mistaken must be based on this independent review.

Certainly, as the majority opinion in this case correctly points out, sentencing is an individualized process. Again, however, this observation begs the issue: what individualized considerations are there in the present case that could conceivably justify the eight-year sentencing disparity between *Davis* and *Garrison?* There are none. In virtually every significant respect—the rehabilitative potential of the offender, the seriousness of the conduct, and the seriousness of the harm actually inflicted upon the victim—the individual characteristics of Garrison's case are far worse than those of Davis' case.

The majority opinion also attempts to justify the twelve-year term in this case by reference to the ABA Standards, which counsel against the imposition of sentences in excess of ten years accept in unusual cases. *See* III *Standards for Criminal Justice* § 18–2.1 and commentary at 52 (Approved Draft 1979 & Supp.1982). Reliance on this standard as a justification for Garrison's inordinately lenient term is mistaken.

Neither this court nor the Alaska Supreme Court has ever applied the ABA ten-year benchmark to cases involving the most serious unclassified felonies—those punishable by a ninety-nine-year maximum term of imprisonment. To the contrary, we have expressly noted that reliance on the ten-year benchmark is appropriate "in all but the most serious categories of cases." *Skrepich v. State,* 740 P.2d 950, 955–56 (Alaska App.1987).[1]

1. The inapplicability of the ABA ten-year standard in the context of the present case is underscored by the fact that the presumptive term for Garrison's sexual assault conviction alone is ten years' imprisonment. This term is meant to

apply to a typical first offense of first-degree sexual assault committed with a dangerous instrument but involving no additional crimes. The majority in the present case makes much of the fact that the sentencing court, in imposing

My independent review of the entire sentencing record in this case convinces me that an aggregate term of twelve years' imprisonment for the three exceptionally serious crimes that Garrison committed is too lenient and cannot be justified. The record in this case does not support the need to give overriding emphasis to the sentencing goal of rehabilitation. Indeed, the sentencing court did not seek to do so. Absent a need to prioritize rehabilitation, the imposition of a twelve-year term in this case gives inadequate emphasis to the important sentencing goals of deterrence and community condemnation. I would find that, at a minimum, a sentence within the lower ranges of the *Page* benchmark should have been imposed.

Garrison's twelve-year term, restricted his eligibility for parole. Yet Garrison's ten-year presumptive term for sexual assault in the first degree would necessarily preclude eligibility for early release.